DUGAN et al. v. BRIDGES, Governor, et al.
No. 290.

District Court, D. New Hampshire.
Oct. 6, 1936.

This is a complaint filed April 30, 1936, brought by Michael J. Dugan and Denis M. Creeden, copartners doing business under the firm name and style of Creeden Tobacco Company and who are registered as such with the Secretary of State in the State of New Hampshire. Each of said complainants is a resident and citizen of said state. The principal place of business of said company is in Manchester, county of Hillsborough, in said state.

The respondent H. Styles Bridges is the duly elected, qualified, and acting Governor of the State of New Hampshire, charged with the administration and enforcement of its laws. He is a citizen and resident of the city of Concord in the county of Merrimac in said state.

The respondent Thomas P. Cheney is the duly appointed, qualified, and acting Attorney General of the State of New Hampshire, and is the principal legal official of said state, charged with the enforcement of its laws. He is a citizen and resident of the city of Laconia, in the county of Belknap, in said state.

The respondents Bernard B. Chase, William H. Marcotte, Jr., and F. Clyde Keefe are citizens and residents of the state of New Hampshire and are the duly appointed, qualified, and acting members of the New Hampshire State Liquor Commission, an administrative agency of said state, and as such constitute the entire membership of said board. They are charged by the statute of the state of New Hampshire entitled "an act to regulate the traffic in intoxicating liquor," chapter 3 of the Laws of 1934, Special Session, approved June 5, 1934, with the regulation of the manufacturing, sale, and transportation of intoxicating liquors and with the primary responsibility of the enforcement of all liquor and beverage laws.

The complainants seek an interlocutory injunction restraining the respondents from revoking complainants' license to engage in the business of wholesale dealers of beverages, including beer and other malt beverages, and from invoking certain penalties against complainants, and to have certain sections of the statute regulating the sale of beer and other fermented malt liquors declared unconstitutional and their enforcement enjoined. The complainants allege that there are a large number of other persons, firms, copartnerships, and corporations whose condition with respect to the matters and things alleged in their complaint is similar and who are interested in the subject-matter of this litigation, and that the complainants filed their bill on behalf of themselves and all others similarly situated, for the purpose of obtaining equitable relief and to enjoin and restrain the threatened interference with their business under the color of certain acts of the Legislature of the State of New Hampshire and certain rules and regulations purported to be made thereunder by said State Liquor Commission. They ask for a declaratory judgment on the question of the validity and constitutionality of the above-mentioned act and chapter 99 of the Laws of 1933, approved May 2, 1933, as amended.

It is claimed that the matters in controversy and the questions involved arise under the Constitution and Laws of the United States, in that they involve the complainants right to the protection of the Constitution and amendments thereto in the prosecution of their lawful business.

It is said that the New Hampshire statutes hereinafter mentioned violate the Fourteenth Amendment and Commerce Clause of the Constitution (article 1, § 8, cl. 3), and therefore they are unconstitutional and void.

It is alleged that the amount in controversy herein exceeds the sum or value of $3,000 exclusive of interest and costs.

The jurisdiction of this court is invoked under the provisions of section 24, subdivisions (1) and (14), of the Judicial Code (U.S.C.A. tit. 28, § 41, subdivisions (1) and (14).

The respondents filed a motion to dismiss and an answer. The motion to dismiss is put upon the general ground that this case does not really and substantially involve a dispute or controversy properly within the jurisdiction of this court, because:

(1) The value of the subject-matter is not alleged to and does not exceed the sum of $3,000.

(2) The complainants have a plain, adequate, and complete remedy at law.

(3) The bill does not state a case for the jurisdiction of equity.

The respondents' answer, following their motion to dismiss, for want of jurisdiction, admits certain allegations in complainants' bill, denies others, and with respect to some alleges lack of information and leaves the complainants to their proof.

■ Respondents' motion to dismiss admits all facts which are well pleaded, and we will so treat them.

The act of the New Hampshire Legislature, of which complaint is made, is chapter 99 of the Laws of 1933, entitled "An act authorizing and regulating the manufacture, transportation and sale of certain alcoholic beverages." Section 26 of said act, as amended by chapter 152 of the Laws of 1935, § 2, and section 27 of said act, read as follows:

"26. Certificates of Approval. No wholesale permittee shall purchase any beverages from any manufacturer not holding a permit issued under the provisions of Chapter 99 of the Laws of 1933 and transport or cause the same to be transported into the state of New Hampshire for resale unless such manufacturer has obtained from the commission a certificate of approval which certificate shall not be granted unless and until such manufacturer shall have agreed with the commission to furnish to the commission, on or before the tenth day of each month, a report under oath, on a form to be prescribed by the commission, showing the quantity of beverages sold or delivered to each wholesale permittee during the preceding calendar month. If any such manufacturer shall, after obtaining such certificate, fail to submit any such report the commission shall, in their discretion, revoke such certificate."

"27. Fee for Certificate of Approval. The fee for a certificate of approval issued pursuant to provisions of this Act shall be five hundred dollars ($500) per annum, which sum shall accompany the application for such certificate."

At a special session of the New Hampshire Legislature, held in 1934, there was additional legislation respecting the traffic in intoxicating liquor, namely, chapter 3 of the Laws of 1934, Sp.Sess., entitled "An act to regulate the traffic in intoxicating liquor." This act, which purports to be an amendment to chapter 99 of the Acts of 1933, provides for the appointment by the Governor and Council of a State Liquor Commission consisting of three members; that after such appointment and said members have qualified, they shall have all the powers of the Liquor Control Board established by chapter 99 of the Laws of 1933, and it is provided that all the powers and duties conferred upon the Control Board by the provisions of said chapter 99 shall be transferred to the State Liquor Commission, and that said commission shall be authorized to prescribe rules and regulations for the issuance of permits and for regulating possession, manufacture, transportation, sale, offer for sale, or solicitation of orders for sale of all beverages, including beer and other malt liquors, the operation of the business, permittees, and for any other purposes required for the efficient execution of the act. The commission is charged with the primary duty of the enforcement of the law and all rules and regulations promulgated thereunder. Any violation of such act or rules may be punished by a fine of not more than $500 or imprisonment for not longer than six months, or both such fine and imprisonment. The law further provides that if any permittee is convicted of a violation of any of the provisions of the act or any of the rules and regulations thereunder, the court shall immediately declare his permit revoked, and no permit shall thereafter be granted to him within the period of three years thereafter. The act also provides for the seizure and forfeiture of any and all intoxicating liquor being transported within the state in violation of the act or any other law of the state, together with the vehicle, team, automobile, or other conveyance engaged in such illegal transportation.

The commission is also authorized to revoke said permits for any violation of any of the provisions of said act or of any of the rules or regulations of the commission.

Reference to each of said acts is made a part of the bill as fully as those set forth at length.

The following facts are set forth in the plaintiffs' bill of complaint, namely: That complainants are now, and have been continuously since May 1933, engaged in purchasing and selling beer and other fermented beverages and are the holders of a valid and subsisting wholesalers' permit under chapter 99 of the Laws of 1933 as amended;

that said permit will expire April 30, 1936, and their new permit will expire April 30, 1937; that its wholesalers' permits authorize complainants to sell beverages including beer and other fermented malt liquors in barrels, bottles, or other closed containers to other permittees for resale only, and to purchase and transport or cause to be transported into the state of New Hampshire beer and other fermented malt beverages for resale as above set forth; that during the period in which the complainants have been engaged in selling beer and fermented malt liquors, a great bulk of such liquors have been manufactured by Anheuser-Busch, Inc., under the label or trade-name of "Budweiser"; that the name "Budweiser" as applied to beer is well and favorably known in the state of New Hampshire and elsewhere on account of the excellency of its quality and the excellent reputation of the manufacturer thereof; and that a large business has been built up by the complainants and large sums of money expended in the advertising, soliciting, and building up of extensive demands for beer bearing the label or trade mark "Budweiser"; that the complainants have a large number of customers who retail said beer; that as a result of the demand, complainants have a large force of employees and a trucking and warehouse system exclusively engaged in such business; that the average annual purchases made by the complainants for the state of New Hampshire approximates the gross sum of $30,000, and that during all the time the complainants have dealt in said beverages they have paid to the New Hampshire State Liquor Commission the annual license fees and all other charges required by law. The complainants further set forth that all of the sales to complainants by Anheuser-Busch, Inc., have been consummated on written or telegraphic orders directed to said Anheuser-Busch, Inc., at St. Louis, Mo., and accepted by said Anheuser-Busch, Inc., outside the state of New Hampshire and have in all cases called for delivery to the complainants f. o. b. railroad cars at St. Louis, Mo.; that such sales have been entirely consummated outside of the state of New Hampshire and in the state of Missouri; that payment therefore has been made by complainants to the manufacturer at St. Louis, Mo.; that the title to said beer so purchased, as to each specific purchase, has passed to complainants at St. Louis, Mo.; that the same has been transported to complainants' place of business in Manchester, N. H., at complainants' expense in interstate commerce from St. Louis, Mo., to said Manchester, N. H.

It is alleged that complainants are informed and believe, and therefore allege on information and belief, that Anheuser-Busch, Inc., at all times herein mentioned was and now is a corporation organized and existing under the laws of the state of Missouri and is a citizen and resident of said state; that it is engaged in the manufacture, transportation, and sale of beer wholly outside of the state of New Hampshire and has never been engaged in the business of manufacturing, transporting, or selling beer or other intoxicating liquors within the state of New Hampshire; nor has it held a permit to engage in any such occupation within this state under the provisions of chapter 99 of the Laws of 1933.

It is alleged that Anheuser-Busch, Inc., has obtained and now holds a certificate of approval for the period ending April 30, 1936, issued to it by the New Hampshire State Liquor Commission under the provisions of section 26, as amended, and section 27 of the Laws of 1933; but that it has notified the complainants that because of its opinion that said sections are unconstitutional, it will not apply for or obtain a similar certificate of approval for the period from May 1, 1936, to April 30, 1937. It is alleged that complainants are in no sense the agents of Anheuser-Busch, Inc., own no stock in or securities of said company either directly or indirectly, and have no control over its management; that they have no relations with said company except as they purchase beer from it; and that they are powerless to compel it to obtain a certificate of approval for the period last above mentioned.

It is alleged that notwithstanding the complainants have fully complied with all the laws of the state of New Hampshire and regulations of the State Liquor Commission, nevertheless respondents threaten to prevent and prohibit complainants from transporting or causing to be transported malt beverages purchased from Anheuser-Busch, Inc., into the state of New Hampshire; to seize and forfeit any such liquors purchased by complainants from Anheuser-Busch, Inc., for resale, together with the automobiles, trucks, and other vehicles used for the transportation of such liquor; to revoke complainants' wholesale permit; to prevent complainants from thereafter engaging in the business of selling or dis-

tributing such liquors for a period of three years and to invoke all the penalties against the complainants provided by law.

It is alleged that the complainants had on hand at the time of the filing of this petition in excess of $1,200 worth of "Budweiser" beer; that a carload of said beer of the value of approximately $2,000 has been recently purchased which cannot be delivered in the state of New Hampshire until after May 1, 1936, when the certificate of approval of Anheuser-Busch, Inc., will have expired, and that if the threats of the respondents are carried out such liquors on hand and so purchased will be a total loss to the complainants and their sales to the permittees who retail said products of Anheuser-Busch, Inc., will be interrupted; that such permittees who sell malt liquors will be compelled to purchase their supplies elsewhere and the business of the complainants will be destroyed.

Complainants further allege that because of the failure of Anheuser-Busch, Inc., to obtain a certificate of approval, and because of the short space of time intervening between the filing of this bill and the expiration of the certificate of approval, an emergency exists requiring the court to issue a temporary restraining order to prevent the loss or damage that would otherwise accrue if the threats of the respondents were carried out. It is also alleged that the acts of the New Hampshire State Legislature hereinbefore referred to constitute an attempt on the part of the state to regulate and interfere with interstate commerce between the state of Missouri and the state of New Hampshire in violation of the Constitution of the United States.

The prayer of the petition is that a temporary restraining order be granted; that an interlocutory injunction issue pending full hearing, and upon final determination upon the merits of the petition, the temporary injunction be made permanent, restraining the respondents from carrying out and enforcing the provisions of New Hampshire laws of which complaint is made. A temporary restraining order was granted pending hearing.

Dudley Orr, Asst. Atty. Gen., for the State of New Hampshire.

Demond, Woodworth, Sulloway, Piper & Jones and Jonathan Piper, all of Concord, N. H., for Creeden Tobacco Co.

Before BINGHAM, Circuit Judge, and MORRIS, and PETERS, District Judges.

### Jurisdiction.
### Amount in Controversy.

MORRIS, District Judge (after stating the facts as above).

The first issue raised by the pleadings is that of jurisdiction. It is claimed by the respondents that the amount in controversy does not exceed the sum of $3,000, exclusive of interest and costs, as provided in Judicial Code, § 24, subdivision (1), (Title 28 U.S.C.A. § 41 (1).

Nine other firms claiming to be affected by the statute have been allowed to intervene. We agree with the contention of the respondents that the injury to the business of such interveners cannot be added to that of the complainants in order to make up the jurisdictional amount. Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L. Ed. 883; Wheless v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469.

Respondents cite the case of Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 703, 78 L. Ed. 1248, as sustaining their contention. In the above-entitled case it was held that in suits to enjoin the collection of a tax payable annually or the imposition of penalties in case it is not paid, the sum due or demanded is the matter in controversy and the amount of the tax, not the capitalized value, is the measure of the jurisdictional amount.

The respondents argue that although the complainants allege that the value in controversy exceeds $3,000, upon examination of the bill of complaint it appears the real controversy is whether Anheuser-Busch, Inc., shall pay $500 for a certificate of approval as required by the act, and that the principles enunciated in the Healy Case require this court to refuse to take jurisdiction of the present suit. It is further argued that if Anheuser-Busch, Inc., refuses to pay the tax and as a result complainants' business in "Budweiser" beer is lost, the result flows as much from the act of Anheuser-Busch, Inc., as from the operation of the statute. Respondents say that complainants' argument that no tax is involved is not only illogical, but overlooks the most salient subject of their bill, namely, that the whole point of this case is the propriety of New Hampshire requiring foreign brewers to pay a $500 fee for a certificate of approval.

The facts of the instant case are clearly distinguishable from the Healy Case. In the opinion in that case the court carefully distinguishes between mere payment of a tax and threats to impose penalties for nonpayment and cases wherein nonpayment may result in a serious or permanent destruction of the complainants' business, and attention is called to the following language of Mr. Justice Stone wherein he says: "Where a challenged statute commands the suppression or restriction of a business without reference to the payment of any tax, the right to do the business or the injury to it is the matter in controversy. Scott v. Donald, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648; see Bitterman v. Louisville & Nashville Ry. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Gallardo v. Questell (C.C.A.) 29 F.(2d) 897." It appears to us that the complainants come within the above-mentioned rule. The state is not demanding that the complainants pay a tax. There is no tax they can pay which would stop the operation of the statute against them. The state threatens to suppress their business and forfeit their property because a third party over whom they have no control has refused to pay an alleged illegal exaction. Their right to retain their property and continue their business is at stake and the value thereof is the measure of the amount in controversy. In the case of Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596, it is held that the amount in controversy, in a suit to enjoin enforcement of a statute alleged to be unconstitutional in relation to the plaintiffs' business, is the value of the right to carry on the business free from the restraint of the statute. Scott v. Donald, supra, and cases cited. On both reason and authority we hold that the respondents' motion to dismiss for want of jurisdictional amount should be overruled.

## Adequate Remedy at Law.

■ The second issue raised by the respondents is that the complainants have a plain and adequate remedy at law. This point calls for no extended discussion. Injunctive relief is sought on the ground of the unconstitutionality of a state law. Decisions are numerous that hold that, if a state through its administrative officers attempts to enforce the provisions of an act passed by the State Legislature that contravenes the Federal Constitution, a court of equity may intervene for the purpose of preventing irreparable injury because there is no adequate remedy at law. Scott v. Donald, supra; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764.

Does bill allege grounds cognizable in a court of equity?

■ The next point on which the jurisdiction of the court is challenged is that the bill is without equity; that state statutes have no extraterritorial effect. The New Hampshire State Liquor Commission cannot compel Anheuser-Busch, Inc., to pay $500 for a certificate of approval. It does no business within the state of New Hampshire; its sales are made f. o. b. cars at St. Louis, Mo.; if it declines to take out a certificate of approval, the results of its noncompliance with the statute including all penalties are visited upon the complainants in this case. But the threatened cancelation of complainants' permit, the threatened seizure of complainants' property, the interference of complainants' business with its retail permittees and consequent destruction of such business, the inability of the complainants to obtain a permit to resume business for a period of three years, and the threatened visitation of penalties under the statute, are allegations sufficient, if established, to show irreparable injury and bring the case within recognized rules of equity jurisdiction. If the statute complained of is, in fact, unconstitutional, the complainants have no adequate remedy at law and equity will take jurisdiction. Respondents' third ground of objection to the court's jurisdiction is therefore overruled.

Are alleged rights of a kind protected by title 28 U.S.C.A. § 41 (14)?

■ It is argued by the respondents that the rights that the complainants seek to protect do not come within civil rights statute, U.S.C.A. tit. 28, § 41 (14); that it is too well settled for argument that the right to traffic in intoxicating liquor is not a right, privilege, or immunity secured by the Constitution of the United States or any law of the United States; and in support of their contention they cite the cases of Mugler v. Kansas, 123 U.S. 623, 625, 8 S.Ct. 273, 297, 31 L.Ed. 205, and Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620.

It must be conceded that the traffic in intoxicating liquor is not a matter of right such as the dealing in the ordinary necessities of life; that intoxicating liquor falls

within a class of merchandise the sale of which may be regulated by tate legislation, but in so far as it is an a cicle of commerce its regulation in interstate commerce is subject to the regulation of Congress. In all such matters of regulation that come within the police power of the state, the legislation must have some legitimate connection with the protection of the public welfare or public health. This principle is well stated in the case of Lemke v. Farmers' Grain Company, 258 U.S. 50, 59, 42 S. Ct. 244, 247, 66 L.Ed. 458, in the following language; speaking of the right of State Legislatures to pass laws for protection of public health, morals, and safety and that the same must bear some legitimate relation to the public interest, it is said: "This principle has no application where the State passes beyond the exercise of its legitimate authority, and undertakes to regulate interstate commerce by imposing burdens upon it. This Court stated the principle and its limitations in the discussion of the subject in the Minnesota Rate Case, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.(N.S.) 1151, Ann.Cas.1916A, 18." See, also, Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 560, 22 S.Ct. 431, 46 L. Ed. 679; Chicago B. & Q. Ry. Co. v. People of State of Illinois ex rel. Drainage Commissioners, 200 U.S. 561, 593, 26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175.

It is stated in the case of Mugler v. Kansas supra, that: "If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

Upon the facts and circumstances alleged in complainants' bill, jurisdiction of this court may be found in the provisions of title 28 U.S.C.A. § 41 (14).

### Discrimination.

■ It is contended by the respondents that the provision of the Constitution giving Congress the power to "regulate commerce with foreign nations and among the several states and the Indian tribes" was not intended to take away and does not take away from the states their inherent police power to regulate interstate commerce in the course of protecting the health and welfare of the citizens of the several states; that the power of the states to tax inter-

state commerce is not entirely eclipsed by the constitutional provision above quoted. It is argued that the $500 fee is merely a legislative estimate of the cost of administrative supervision and control to be apportioned to each brewer outside of the state.

It is important to determine whether the statutes of which complaint is made so far interfere with a free flow of commodities in interstate commerce between the states as to contravene the Constitution of the United States, and in determining this question we must give consideration to the inherent rights reserved by the states to exercise their police powers for the protection of the health and morals of their citizens and the provision of the Constitution giving Congress the power to regulate interstate commerce. On which side of the dividing line does this case fall? It is said in the Minnesota Rate Case, 230 U.S. 352, 400, 33 S.Ct. 729, 740, 57 L.Ed. 1511, 48 L. R.A.(N.S.) 1151, Ann.Cas.1916A, 18: "The principle, which determines this classification underlies the doctrine that the states cannot, under any guise, impose direct burdens upon interstate commerce. For this is but to hold that the states are not permitted directly to regulate or restrain that which, from its nature, should be under the control of the one authority, and be free from restriction, save as it is governed in the manner that the national legislature constitutionally ordains. Thus, the states cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it."

The state of New Hampshire, once a dry state, having adopted a new policy and legitimatized the sale and importation of beer and other malt beverages, has thereby made such liquors legitimate articles of commerce, and to that extent they come within the Commerce Clause of the Constitution, except in so far as Congress has surrendered its constitutional power to the states. But under any power surrendered to the states they cannot discriminate between the same products manufactured within the state and those manufactured without the state. Any attempt to impose a tax upon the importation of liquors that causes such discrimination is an attempt to regulate interstate commerce and clearly comes within the provisions of the Federal Constitution. An examination of the New

Hampshire acts discloses that each local manufacturer and wholesaler is required to furnish the commission, on a form to be prescribed, a statement under oath showing the quantity of beverages sold for resale during the preceding calendar month. The Anheuser-Busch, Inc., not being a brewer within the state of New Hampshire, would not come within these provisions; therefore the law has required that foreign brewers in order to make such sales to wholesalers within the state of New Hampshire must agree to make such reports. We see nothing inconsistent or discriminatory in requiring from nonlocal brewers the same character of reports as required of local brewers.

But it is argued by the complainants that as to its business the statute is discriminatory. It cannot be denied that the state of New Hampshire has the right to classify the various occupations relating to intoxicating liquor and it has done so. It has placed in one classification all those who manufacture within the state; in another all out-of-state manufacturers who sell to wholesalers within the state. Other classifications are wholesalers, off-sale dealers, on-sale dealers, etc. Each person falling within a particular classification must pay the requisite fee and otherwise conform to the requirements relating to his group. A local manufacturer, upon complying with the provisions of the statute, may sell in bulk to wholesale permittees anywhere in the state, and such permittees are limited as to their resales only by the provisions of the statute. Local manufacturers may transport and ship to other states their products. It may be presumed that Anheuser-Busch, Inc., has complied with the laws relating to manufacturers enacted by the state of Missouri, and that they may transport their products to other states, but the laws of the state of New Hampshire provide that they cannot do so except upon the payment of a $500 fee and compliance with the provisions respecting reports. While this may not be discriminatory between manufacturers in different states, it does work a hardship against the complainants in this case, in that they are barred from transporting into the state or selling within the state any malt liquors manufactured outside the state unless such manufacturers pay the fee provided by law. Such a hardship works to the advantage of local brewers and against the interests of out-of-state brewers, in that local wholesalers are required to patronize local brew-

eries unless out-of-state manufacturers obtain certificates of approval for which they must pay $500.

Respondents urge the claim that to require out-of-state brewers to get a certificate of approval before selling their products in New Hampshire insures the enforcement of pure food and drug laws and helps prevent undesirable persons from taking a part in an industry that is singularly susceptible to abuse and social evil. It is also claimed that the statute is regulatory in aid of a legitimate tax; that substantial revenues of the state of New Hampshire are derived from the liquor traffic and that such revenues are the result of a tax imposed on retailers; that the real tax is one of $3 upon every barrel of beer sold within the state. Laws 1933, c. 99, § 21, as amended by the insertion of section 21-a, Laws 1935, c. 149. That unless foreign brewers file the reports required by section 26, as amended by Laws 1935, c. 152, § 2, accurate and comprehensive audits of sales within the state will be impossible and revenues in excess of $1,000 a day will be seriously jeopardized.

The answer to the first contention above mentioned is that the statute requiring out-of-state brewers to obtain certificates of approval does not depend upon any examination or analysis of their products, but upon their agreement to file reports as required by section 26, above mentioned.

There is some force in the second contention that the reports required will aid the commission in making a check of the amount of liquor sold. Wholesalers within the state are required to make such report for the benefit of the commission and to require additional reports from manufacturers, resident and nonresident, makes a double check upon sales, and we cannot say that it is not a wise regulatory provision of the law.

New Hampshire statutes provide that manufacturers within the state must pay a fee of $2,000 for the privilege of manufacturing, selling to wholesalers within the state, and shipping out of the state. They are required to make the same reports as are required of out-of-state manufacturers. The fee for a license exceeds any fee required of Anheuser-Busch and in this respect cannot be said to discriminate against the latter. The lesser fee is included in the greater. It seems to us that the discrimination to invalidate the law must be discrimination between individuals of the same

class. We find no such discrimination in the New Hampshire statutes. Patapsco Guano Co. v. Board of Agriculture of North Carolina, 171 U.S. 345, 18 S.Ct. 862, 43 L.Ed. 191; Bradley v. Pub. Utilities Comm., 289 U.S. 92, 53 S.Ct. 577, 77 L.Ed. 1053, 85 A.L.R. 1131.

Undue Burden Upon Interstate Commerce.

Since we find that there is no real discrimination under the New Hampshire law, any objection to it based upon the Commerce Clause of the Federal Constitution must be on the theory that it is an undue burden on interstate commerce. The line of demarcation between the Commerce Clause of the Federal Constitution and the power of the state to regulate the importation of liquor into its borders has been a subject of judicial determination in many cases.

As stated in respondents' brief, the line is not symetrical but is indented where certain articles of commerce like wild game (New York ex rel. Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75) and oleomargarine (Plumley v. Massachusetts, 155 U.S. 461, 15 S.Ct. 154, 39 L.Ed. 223) are subject to extraordinary state regulations. The most important of these indentions is the one which relates to intoxicating liquor. A very interesting series of cases decided in 1847 may be found in license cases. In one of these, Peirce v. New Hampshire, 5 How. 554, 586, 12 L.Ed. 256, the importation of a barrel of gin in the original package from Boston to Portsmouth was the subject of an indictment under the New Hampshire law. The court held the New Hampshire law constitutional. Chief Justice Taney said: "Upon the whole, therefore, the law of New Hampshire is, in my judgment, a valid one. For, although the gin sold was an import from another State, and Congress have clearly the power to regulate such importations, under the grant of power to regulate commerce among the several States, yet, as Congress has made no regulation on the subject, the traffic in the article may be lawfully regulated by the State as soon as it is landed in its territory, and a tax imposed upon it, or a license required, or the sale altogether prohibited, according to the policy which the State may suppose to be its interest or duty to pursue." Subsequent to this decision it was argued that the states had the power to declare what should be an article of lawful commerce and could declare liquors deleterious to morals and health and therefore not legitimate articles of commerce. The language above quoted, however, is hardly susceptible of such an interpretation. It is argued by the respondents that consideration of all the authorities in their historical perspective requires a decision that the statute of which complaint is made in the instant case is a legitimate exercise of the police power of New Hampshire within the limits of the Federal Constitution. In the later case of Leisy v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 690, 34 L.Ed. 128, the court said: "Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations, while they retain that character."

The situation after the decision in the Leisy Case was that a "dry" state could not prevent the importation of liquor into the state and the sale by the consignee of such liquor in the original package. A state which wished to prevent the sale of liquor within its borders thus found its policy thwarted to that extent.

### Wilson Act.

Following the decision in Leisy v. Hardin, supra, Congress on August 8, 1890, enacted the Wilson Act (U.S.C.A., tit. 27, § 121). The Wilson Act provided that intoxicating liquors transported into any state and remaining therein for use, consumption, sale, or storage is upon arrival in such state subject to the operation and effect of the laws of the state enacted in the exercise of its police powers and that it shall not be exempt therefrom by reason of being introduced in original packages or otherwise. It was contended that under this statute the state law could be applied to a shipment of liquor while it was in transit and before it had reached the consignee until the Supreme Court in Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088, decided that "arrival" meant arrival in the hands of the consignee, and that a state was without power to limit or interfere with the importation of liquor until it had reached its destination.

In the case of Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 272, 41 L.Ed. 632, speaking of the Wilson Act the court said:

"That law was not intended to confer upon any state the power to discriminate injuriously against the products of other

states in articles whose manufacture and use are not forbidden, and which are, therefore, the subjects of legitimate commerce. When that law provided that 'all fermented, distilled or intoxicating liquors transported into any state or territory, remaining ,therein for use, consumption, sale or storage therein, should, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors, and be valid; or it may provide equal regulations for the inspection and sale of all domestic and imported liquors, and be valid. But the state cannot, under the congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

See, also, Vance v. W. A. Vandercook Co., 170 U.S. 438, 18 S.Ct. 674, 42 L.Ed. 1100; Minneapolis Brewing Co. v. Mc-Gillivray (C.C.) 104 F. 258.

Under the principles of these decisions, legislation of several states passed in the exercise of the police powers was held void as in conflict with the Commerce Clause of the Constitution.

The ground of the majority opinion in Scott v. Donald, supra, was that the state law discriminated between liquors produced within the state and those produced outside the state. It would seem that subject to this limitation a state is at liberty to make such laws and regulations with reference to the sale and consumption of liquor after its delivery to the consignee as it might elect to enact. The "act simply removed an impediment to the enforcement of the state laws with respect to imported packages in their original condition. * * * It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction." Adams Express Co. v. Kentucky, 238 U.S. 190, 199, 35' S.Ct. 824, 826, 59 L.Ed. 1267, L.R.A.1916C, 273, Ann.Cas. 1915D, 1167.

In the case of In re Rahrer, 140 U.S. 545, 555, 11 S.Ct. 865, 867, 35 L.Ed. 572, it is said: "The constitution does not provide that interstate commerce shall be free, but, by the grant of this exclusive power to regulate it, it was left free except as congress might impose restraint. Therefore it has been determined that the failure of congress to exercise this exclusive power in any case is an expression of its will that the subject shall be free from restrictions or impositions upon it by the several states. * * * It is not to be doubted that the power to make the ordinary regulations of police remains with the individual states, and cannot be assumed by the national government, and that in this respect it is not interfered with by the Fourteenth Amendment. Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357 [28 L.Ed. 923]."

### The Webb-Kenyon Act.

Next came the Webb-Kenyon Act enacted March 1, 1913 (U.S.C.A. tit. 27, § 122 and note). This act was a further surrender to the states of the constitutional power of Congress to regulate interstate commerce in intoxicating liquors. This act in its original form contained the same language that was used in the Wilson Act to prevent discrimination against out-of-state products. See 49 Cong.Rec. p. 1687. In the act as finally passed the restrictive language does not appear. Its omission seems important. It shows an intent to give the states an entirely free hand in regulating the importation and transportation of liquor.

Under the Webb-Kenyon Act the shipment or transportation in any manner or by any means of any spiritous or intoxicating liquor from one state to another to be disposed of in violation of any law of such state is prohibited. Each state appears to be left free to enact such laws relating to the traffic in intoxicating liquor as it may desire. There appears to be no prohibition in the act against discrimination between liquors produced within the state and those produced outside the state.

A leading case under the Webb-Kenyon Act is Clark Distilling Company v. Western Maryland Ry. Co., 242 U.S. 311, 37 S. Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845. The case involved an act of West Virginia which forbade all shipments of intoxicating liquor into the

state whether for personal use or otherwise. The distilling company offered for transportation into the state a shipment of intoxicating liquor which the defendant railway refused to accept and the plaintiff brought its action (for damages). It was held that the Webb-Kenyon Act operated to give effect to the prohibition of the West Virginia law in respect to liquors shipped into the state for personal use by withdrawing from such shipments the immunity of interstate commerce and to forbid the shipment or transportation into the state of liquors intended to be received or possessed there for personal use contrary to such state prohibition. It was further held that the Webb-Kenyon Act was a legitimate exercise of the power of Congress, and that that power, in the case of intoxicants, because of their character extends to the total prohibition of their transports in interstate commerce, and necessarily includes the lesser power exercised in the Webb-Kenyon Act of adapting the regulation to the various local requirements and conditions that may be expressed in the laws of the state.

In view of the legislation above mentioned, it cannot be claimed that the New Hampshire act of which complaint is made imposes an undue burden upon interstate commerce and for that reason is unconstitutional. See Seaboard Air Line Ry. v. State of North Carolina, 245 U.S. 298, 38 S.Ct. 96, 62 L.Ed. 299; United States v. Hill, 248 U.S. 420, 39 S.Ct. 143, 144, 63 L. Ed. 337. The last-mentioned case was decided under the Reed Amendment passed by Congress March 3, 1917 (U.S.C.A. tit. 27, § 123). In the course of the opinion Mr. Justice Day speaking for the court said: "Congress in the passage of the Reed Amendment must be presumed to have had, and in our opinion undoubtedly did have, in mind this well-known and often declared meaning of interstate commerce. It had already provided in the Wilson Act for state control over liquor after its delivery to the consignee in interstate commerce. In the Webb-Kenyon Act it had prohibited the shipment of liquor in interstate commerce where the same was to be used in violation of the law of the state into which it was transported. In the passage of the Reed Amendment it was intended to take another step in legislation under the authority of the commerce clause. * * * The meaning of the act must be found in the language in which it is expressed, when, as here, there is no ambiguity in the terms of the law. * * * In the proviso it is set forth that nothing contained in the act shall authorize interstate commerce shipments into a state contrary to its laws."

### Eighteenth Amendment.

The Eighteenth Amendment to the Constitution, effective January 16, 1920, did not take away the police power of the state to enforce its provisions by appropriate legislation. Section 2 of the Amendment provides that: "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." National Prohibition Cases, 253 U.S. 350, 40 S.Ct. 486, 64 L.Ed. 946; United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 142, 67 L.Ed. 314. In the last-mentioned case Chief Justice Taft says: "To regard the amendment [18th] as the source of the power of the states to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each state possessed that power in full measure prior to the amendment, and the probable purpose of declaring a concurrent power to be in the states was to negative any possible inference that in vesting the national government with the power of country-wide prohibition, state power would be excluded."

The case of McCormick & Co. v. Brown, 286 U.S. 131, 52 S.Ct. 522, 526, 76 L.Ed. 1017, 87 A.L.R. 448, seems to be very nearly in point. It was a suit brought by nonresident manufacturers and wholesale dealers to restrain state officers of West Virginia from requiring the complainants to obtain permits from the state commissioner of prohibition and to pay an annual license fee of $50 before shipping certain products containing alcohol into the state to purchasers there for resale. The bill charged that the requirements of the state officers, purporting to act under state legislation, constituted an interference with interstate commerce in violation of the Commerce Clause of the Federal Constitution, and that the complainants were without remedy at law.

The court, after holding that the Webb-Kenyon Act was still in force, said: "As the prohibitory legislation of the states may thus continue to have effective operation, there is no reason for denying to the Webb-Kenyon Act its intended application to prevent the immunity of transactions in interstate commerce from being used to impede

the enforcement of the states' valid prohibitions."

### Collier Act.

The Collier Act is a re-enactment of the Webb-Kenyon Act and was passed August 27, 1935, 49 Stat. 877 (27 U.S.C.A. § 122).

As the acts are identical it is not necessary to repeat what has already been said with reference to the original Webb-Kenyon Act.

### Twenty-First Amendment.

Section 2 of the Twenty-First Amendment, adopted December 5, 1933, reads as follows: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

There seems to have been no authoritative ruling by the Supreme Court as to the effect of section 2 of the section above quoted. Its language so closely follows the Webb-Kenyon Act as to lead us to the conclusion that it was copied therefrom and that it should receive the same construction as that given the last-mentioned act. We have examined such cases decided by lower courts as have been called to our attention.

The case of Joseph Triner Corp. v. Arundel (D.C.) 11 F.Supp. 145, a three-judge court, held invalid, as being in violation of the equal protection clause, a statute of Minnesota which prohibited the sale of liquor imported into that state in a finished condition unless the brand of such liquor had been registered in the United States Patent Office and which statute imposed no similar restriction with respect to liquor manufactured in that state. This is quite a different state of facts from those in the instant case.

The next case examined is Young's Market Co. v. State Board of Equalization (D.C.) 12 F.Supp. 140. This case cites with approval the Triner Case and seems to rely largely upon the case of Baldwin et al. v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55. An examination of that case discloses that the subject was the transportation in interstate commerce of milk. As Congress had not then passed any laws regulating interstate shipments of milk at all comparable to the Webb-Kenyon Act, we cannot treat the case as authoritative upon the issue before us.

Another case, decided February 28, 1936, is Pacific Fruit & Produce Company v. Martin et al. (D.C.) 16 F.Supp. 34, in which case an interlocutory injunction was granted. The ground for granting the injunction appears to be discrimination between liquors manufactured outside the state of Washington and those manufactured within the state, and in that respect the case differs from the case at bar as we hold that the New Hampshire statute is not discriminatory.

In the case of Premier-Pabst Sales Corp. v. Grosscup (D.C.) 12 F.Supp. 970, a different conclusion was reached by a three-judge court in the state of Pennsylvania. This case was transferred to the Supreme Court and affirmed upon other grounds than those stated in the original opinion. This decision was handed down May 19, 1936. 298 U.S. 226, 56 S.Ct. 754, 80 L.Ed. 1155. Another case in which an injunction was denied is General Sales & Liquor Co. v. Becker (D.C.) 14 F.Supp. 348.

Reference is made to some other decisions unreported which we have not examined.

### Fourteenth Amendment.

Complainants' objection based on the Fourteenth Amendment is that New Hampshire law deprives them of their property without due process of law and denies them the equal protection of the laws. The first claim seems somewhat inconsistent as it was only by virtue of the statute which they now claim is unconstitutional that complainants were able to establish the business which they now say it deprives them of.

The answer to their contention is that the business which they say would be destroyed is a mere privilege accorded to them by the state law. They have no inherent right to engage in the traffic in intoxicating liquors. Crowley v. Christensen, supra. In the case of Crane v. Campbell, 245 U.S. 304, 38 S.Ct. 98, 99, 62 L.Ed. 304, it is said: "It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranties of the Fourteenth Amendment. * * * As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably

appropriate or needful to render exercise of that power effective. Booth v. Illinois, 184 U.S. 425 [22 S.Ct. 425, 46 L.Ed. 623]; Silz v. Hesterberg, 211 U.S. 31 [29 S.Ct. 10, 53 L.Ed. 75]; Murphy v. California, 225 U.S. 623 [32 S.Ct. 697, 56 L.Ed. 1229, 41 L.R.A.(N.S.) 153]; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 364 [36 S.Ct. 370, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas. 1917B, 455]."

See, also, Barbier v. Connolly, 113 U.S. 27, 31, 32, 5 S.Ct. 357, 28 L.Ed. 923; Mugler v. Kansas, supra; Clark Distilling Company v. Western Maryland Ry. Co., 242 U. S. 311, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A. 1917B, 1218, Ann.Cas.1917B, 845.

With reference to complainants' contention that they are deprived of the equal protection of the law, it must be conceded that the state of New Hampshire has the power and right to classify persons engaged in the sale of intoxicating liquor. Patsone v. Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539. It has done so. Complainants are put in a class of wholesalers who are licensed to sell malt liquors at wholesale to retail dealers. They are subject to the same laws and regulations as all other wholesalers in the state paying the same license fees and are accorded the same rights and privileges.

The contention of complainants that they are being deprived of their rights under the Fourteenth Amendment is not supported by the facts.

One more point is raised, namely, that the New Hampshire act operates beyond the limits of the state and therefore cannot be sustained. It requires no argument or citation of authorities to establish that statutes enacted by the state have no extraterritorial effect, but the statute under consideration is not open to this objection. It deals with a business which might be excluded entirely or it may be permitted with such reasonable limitations as the state may impose. It deals with brewers only when they choose to sell their products in New Hampshire, and since they are free to stay out or come in, the New Hampshire law does not operate extraterritorially.

### Conclusions.

We hold that the Twenty-First Amendment does not withdraw from the states the power surrendered to them by the passage of the Webb-Kenyon Act whether it be considered as a power abdi-

cated which previously had been exercised by Congress, or as one having always been retained or reserved under the police powers of a state. If considered as an act regulating commerce, the Webb-Kenyon Act leaves to the states the power to regulate the traffic in intoxicating liquor free from the Commerce Clause of the Constitution as theretofore interpreted by the courts. While there is no limitation as to discrimination contained in the Webb-Kenyon Act, any state regulation must be reasonable.

If a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects or is a palpable invasion of the rights secured by the fundamental law, it cannot stand the test of constitutionality.

We do not hold that a state might not pass laws which would come within the condemnation of the courts, such for instance as those which have no relation to the public welfare, health, or morals. A pure taxing act on interstate shipments to promote intrastate industries would have no legitimate connection with the police power of the state. But so long as reasonable, having relation to the proper exercise of the police powers of a state, even though the state may obtain incidentally some revenue therefrom, they fall outside the purview of the Commerce Clause. This we conceive to be the true line of demarkation between the powers reserved to the state to regulate the traffic in intoxicants, recognized by Congress in the passage of the Webb-Kenyon Act, and subsequently written into the Twenty-First Amendment.

The New Hampshire statute is not in our judgment a tax statute. Manufacturers may or may not accept the conditions attached to the granting of permits. If they do not, the state does not undertake to compel them to do so. Large sums in revenue are at stake derived from the sales of malt beverages stated to exceed $1,000 a day. To require reports of sales to wholesale dealers in the state is not an unreasonable regulation, and the payment of a fee of $500 for auditing and checking such large transactions is not exhorbitant. Strict regulations are necessary to control the industry.

We hold that sections 26 and 27 of chapter 99 of the New Hampshire Laws of 1933, as amended, are not unconstitutional.

The temporary restraining order is vacated, interlocutory injunction denied, and bill is dismissed.

It is so ordered.

BINGHAM, Circuit Judge, and PETERS, District Judge, concur.