Merrimack,
No. 4756.

CARLING BREWING COMPANY

*v.*

NEW HAMPSHIRE STATE LIQUOR COMMISSION & a.

Argued October 6, 1959.

Decided November 24, 1959.

*Orr & Reno, Eugene C. Struckhoff* and *William B. Norris* (of Ohio), (*Mr. Struckhoff* and *Mr. Norris* orally), for the plaintiff.

*Louis C. Wyman,* Attorney General and *Warren E. Waters,* Deputy Attorney General (*Mr. Waters* orally), for the defendant.

*Leonard G. Velishka* and *Devine, Millimet & McDonough* (*Mr. J. Murray Devine* orally), for West End Beverage Company, Inc. as *amicus curiae.*

KENISON, C. J. 1. At the threshold of this case is a problem of statutory construction in the field of liquor control legislation. 3 Sutherland, Statutory Construction (3d *ed.*) *s.* 7203. The question appears to be one of first impression since counsel have not cited any case directly in point and research has not disclosed one. *Cf. California Bev. &c. Co.* v. *Distillers Distrib. Corp.,* 158 Cal. App. (2d) 758. Specifically the question is whether the action of a manufacturer of malt beverages in reducing the territory of a wholesaler constitutes a discontinuance to sell within the meaning of RSA 181:26 if done because the wholesaler is selling beverages manufactured by another manufacturer. The pertinent part of that statute reads as follows: "The commission may, in its discretion, suspend or revoke the certificate of approval of such manufacturer or importer if such manufacturer or importer *discontinues to sell* beverages to holders of wholesale permits *because* such holders sell beverages manufactured or imported by another manufacturer or importer." (Emphasis supplied).

In construing this statute we find no definitive aid in its statutory history or in the administrative rulings of the Liquor Commission, and thus we turn to the matrix of liquor control legislation and cases generally and particularly those in this state. See Alcoholic Beverage Control (An Official Study by the Joint Committee of the States to Study Alcoholic Beverage Laws, 1950) "By and large, the delegation of authority has been very broad, the powers of control agencies over persons and property extraordinarily sweeping. For example, control authorities are given discretionary power to issue, deny, or revoke licenses, power to determine suitability of persons and premises for licenses, hold hearings, fix the

number of licenses, forbid brewers, wholesalers, or manufacturers to have any interest in the retail licensee's property, regulate hours, location, size of containers, labeling, prices, advertising and employees." Cooprider, Legal Questions in the Operation of the Licensing Systems, 7 Law and Contemporary Problems 621, 622.

Although the regulation of intoxicating beverages in this state has taken many forms, the legislative control has run broad and deep since colonial and provincial times. Sawyer, The Law Regulating the Traffic in Intoxicating Liquors: A Historical Review, 3 Grafton and Coos Bar Association 207 (1896). In more recent cases it has been noted that the laws controlling alcoholic beverages are to be interpreted as a unified whole and as a part of the comprehensive design to regulate the industry strictly in order that no one licensee shall exercise control over another, directly or indirectly. RSA 181:27; *Nashua Wholesale Grocers* v. *State Liquor Commission*, 95 N. H. 224; *State* v. *Muscarello*, 92 N. H. 214; *N. H. &c. Beverage Ass'n* v. *Commission*, 100 N. H. 5. The legislative purpose to exercise a complete and well-rounded system for the regulation and control of intoxicating liquors has been given expression in numerous cases. *Manchester Press Club* v. *Commission*, 89 N. H. 442; *Pulaski Club* v. *Commission*, 89 N. H. 559. Even in those cases where legislation has been expressed in awkward phraseology the prohibitory features of the liquor control statutes have been construed in accordance with the legislative intent. *State* v. *Small*, 99 N. H. 349, 351.

In RSA 181:21, 27 the Legislature has provided that the three general classes of manufacturers, wholesalers and retailers of alcoholic beverages shall be separate and that no control, direct or indirect, and no interest, financial or otherwise, shall be exercised by one over the other. *Nashua Wholesale Grocers* v. *State Liquor Commission*, 95 N. H. 224. This was aimed at the historic evil of the "tied house" (*State* v. *Zazzaro*, 128 Conn. 160) and was enacted to prevent the financial domination of the producer or seller over the purchaser. However, the Legislature did not stop there and in the controlling statute (RSA 181:26) it intended to prevent a manufacturer from obtaining an exclusive outlet or other financial domination. Such a statute is not to be construed strictly. Anno. 136 A. L. R. 1238; anno. 123 A. L. R. 748. See *Black* v. *Magnolia Liquor Co.*, 355 U. S. 24; 1957 Annual Survey of American Law 216. A literal interpretation of RSA 181:26 might be thought to require a complete discontinuance to sell but such a literal con-

struction would be inconsistent with the legislative determination to prevent control of the wholesaler by the manufacturer. It was the evident legislative purpose to prevent a manufacturer from obtaining an exclusive outlet or financial control of the wholesaler either by a discontinuance to sell or by a reduction in territory, if in such case it was done for the reason, or in the statutory language "because," the wholesaler was selling beverages manufactured by another manufacturer. See anno. 2 L. ed. (2d) 1565. *Nashua Wholesale Grocers* v. *State Liquor Commission, supra.* The statute is not violated because a manufacturer discontinues to sell to the wholesaler or reduces his territory, but it is violated when the manufacturer does this because the wholesaler is engaged in the sale of a competing brand. We conclude that the interpretation placed on the statute by the Liquor Commission was correct since any other ruling would permit the manufacturer to obtain an exclusive outlet or a domination of the wholesaler by the simple expedient of a series of threatened partial reductions and discontinuances. The reach of the statute (RSA 181:26) is broad enough to prohibit either of these circumventing devices.

II. It is contended that the findings of fact by the Liquor Commission are arbitrary, unreasonable and not supported by the record. If this contention is well founded the determination of the Liquor Commission will be set aside on this petition for certiorari. *Goldsmith* v. *Kingsford,* 92 N. H. 442. Apart from consideration of errors of law, our view of the record is limited to the determination of whether the findings of fact could reasonably be made. *Cloutier* v. *State Milk Control Board,* 92 N. H. 199, 203; *Winn* v. *Jordan,* 101 N. H. 65. We are not free to make findings *de novo* or to revise the findings of the administrative agency on the basis of selected portions of the record. *Opinion of the Justices,* 98 N. H. 533, 536. The fact that a contrary finding could have been made is not ground for vacating the Commission's findings. *Sinkevich* v. *Nashua,* 97 N. H. 262, 265.

There was direct testimony by the wholesaler, corroborated by others, that the plaintiff threatened the wholesaler with a loss of its franchise unless it gave up the sale of a competing brand (Narragansett). This was denied by the plaintiff which claimed that this testimony was merely contrived inventiveness on the part of the wholesaler. The plaintiff's evidence was to the effect that the reduction in the wholesaler's accounts and territory was merely part of a long-range plan to realign territory and to increase sales

by wholesalers with reduced territory and that this plan was motivated solely by compelling business reasons. There was also evidence supporting the wholesaler's complaint from other wholesalers who sold Carling products. Evidence was also introduced indicating a tendency by the plaintiff to arrange for and procure exclusive outlets in other New England states.

This conflicting evidence gave rise to two possible conclusions. One was that the plaintiff was merely engaged in a general realignment of his territory for wholesalers in this state and the reduction to the complaining wholesaler was an inevitable and innocent result thereof motivated only by the plaintiff's purpose to intensify its sales. The other conclusion was that the plaintiff was telling the complaining wholesaler, you have your choice between discontinuing Narragansett products or keeping them at the price of a reduction in your Carling territory and accounts.

A careful reading of the whole record and the exhibits, aided by the briefs of counsel, indicates that there is support in the record for either conclusion. The heart of the matter was motive and credibility and we are unable to say that the Commission could not make the finding it did on the record before it. Consequently, we find no basis in this certiorari proceeding to set aside the findings of the Liquor Commission. 3 Davis, Administrative Law Treatise, *ss.* 24.02 and 24.06 (1958).

III. The provision of the statute (RSA 181:26) is attacked as unconstitutional in that it discriminates against the plaintiff as an out-of-state manufacturer and denies him the equal protection of the law afforded by the State Constitution. The scope of the plenary power of a state in enacting alcoholic beverage laws is extensive (*State* v. *Roberts,* 74 N. H. 476; *Sterling Cider Co.* v. *Jackson,* 90 N. H. 541) and this is particularly true since the effective date of the Twenty-first Amendment to the United States Constitution. *California* v. *Washington,* 358 U. S. 64; Note, Economic Localism in State Alcoholic Beverage Laws — Experience Under the Twenty-first Amendment, 72 Harv. L. Rev. 1145 (1959).

It is claimed that the statute is discriminatory and denies equal protection of the law because the certificate of approval of an out-of-state manufacturer may be suspended while no comparable provision is made in the case of a manufacturer within the state. In view of the statutory provisions relating to manufacturers it may be doubted that this discrimination exists at all (see *Dugan* v. *Bridges,* 16 F. Supp. 694, appeal dismissed 300 U. S. 684; *Nashua*

*Wholesale Grocers* v. *State Liquor Commission*, 95 N. H. 224) but, in any event, we are not required to pass on it inasmuch as it is a matter of judicial notice that there is no manufacturer of malt beverages within the state.

We conclude that the statute was properly interpreted by the Liquor Commission, that its findings cannot be set aside, and its action has not deprived the plaintiff of any constitutional rights under the State Constitution.

*Petition denied.*

All concurred.