# SEABOARD AIR LINE RAILWAY *v.* STATE OF NORTH CAROLINA.

### ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 18.　Submitted November 7, 1917.—Decided December 10, 1917.

The power of a State under the Webb-Kenyon Law to forbid shipment into its territory of intoxicating liquor from other States includes the lesser power to prescribe by law the conditions under which such shipments may be allowed.

The Webb-Kenyon Law having subjected interstate shipments of intoxicating liquor to state legislation, a state law requiring carriers to keep records of such shipments, open for the inspection of any officer or citizen, is valid, notwithstanding the prohibition of § 15 of the Act to Regulate Commerce, as amended June 18, 1910, against the divulging of information by interstate carriers.

Section 5, North Carolina Public Laws, 1913, c. 44, p. 76, sustained.

169 N. Car. 295, affirmed.

THE case is stated in the opinion.

*Mr. Murray Allen* for plaintiff in error.

*Mr. James S. Manning,* Attorney General of the State of North Carolina, and *Mr. Robert H. Sykes,* Assistant Attorney General of the State of North Carolina, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Pertinent provisions of "An Act to secure the enforcement of the laws against the sale and manufacture of intoxicating liquors" established by the General Assembly of North Carolina March 3, 1913, (P. L., 1913, c. 44, p. 76), are copied in the margin.[1] Section 5 requires rail-

---

[1] Public Laws of North Carolina, 1913, c. 44, p. 76:

"Sec. 1. That it shall be unlawful for any person, firm, corporation, association or company, by whatever name called, other than druggists and medical depositories duly licensed thereto, to engage in the business of selling, exchanging, bartering, giving away for the purpose of direct or indirect gain, or otherwise handling spirituous, vinous or malt liquors in the State of North Carolina. Any person, firm or corporation or association violating the provisions of this act shall be guilty of a misdemeanor.

"Sec. 2. That it shall be unlawful for any person, firm, association or corporation by whatever name called, other than druggists and medical depositories duly licensed thereto, to have or keep in his, their or its possession, for the purpose of sale, any spirituous, vinous or malt liquors; and proof of any one of the following facts shall constitute *prima facie* evidence of the violation of this section:

"First: The possession of a license from the government of the United States to sell or manufacture intoxicating liquors; or

"Second: The possession of more than one gallon of spirituous liquors at any one time, whether in one or more places; or

"Third: The possession of more than three gallons of vinous liquors at any one time, whether in one or more places; or

"Fourth: The possession of more than five gallons of malt liquors at any one time, whether in one or more places; or

"Fifth: The delivery to such person, firm, association or corporation of more than five gallons of spirituous or vinous liquors, or more than twenty gallons of malt liquors within any four successive weeks, whether in one or more places; or

road companies to keep a separate book in which shall be entered the name of every person to whom intoxicating liquor is shipped, together with amount, kind, date of receipt, etc., to be followed by the consignee's signature acknowledging delivery. And it further provides that the

---

"Sixth: The possession of intoxicating liquors as samples to obtain orders thereon: . . . .

"Sec. 3. Upon the filing of complaint, under oath, by a reputable citizen, or information furnished under oath by an officer charged with the execution of the law, before a justice of the peace, recorder, mayor, or other officer authorized by law to issue warrants, charging that any person, firm, corporation, association or company, by whatever name called, has in his, their or its possession, at a place or places specified, more than one gallon of spirituous or vinous liquors or more than five gallons of malt liquors for the purpose of sale, a warrant shall be issued commanding the officer to whom it is directed to search the place or places described in such complaint or information, . . .

"Sec. 5. All express companies, railroad companies, or other transportation companies doing business in this State are required hereby to keep a separate book in which shall be entered immediately upon receipt thereof the name of the person to whom the liquor is shipped, the amount and kind received, and the date when received, the date when delivered, by whom delivered, and to whom delivered, after which record shall be a blank space, in which the consignee shall be required to sign his name, or if he cannot write, shall make his mark in the presence of a witness, before such liquor is delivered to such consignee, and which said book shall be open for inspection to any officer or citizen of the State, county, or municipality any time during business hours of the company, and said book shall constitute *prima facie* evidence of the facts therein and will be admissible in any of the courts of this State. Any express company, railroad company, or other transportation company or any employee or agent of any express company, railroad company, or other transportation company violating the provisions of this section shall be guilty of a misdemeanor: *Provided,* upon the filing of a certificate signed by a reputable physician or two (2) reputable citizens that the consignee is unable, by reason of sickness or infirmities of age, to appear in person, then the said company is authorized to deliver any package to the agent of said consignee, and the agent shall sign the name of the consignee and his own name, and the certificate shall be filed of record."

book shall be open for inspection by any officer or citizen, and makes failure so to do a misdemeanor.

Plaintiff in error was indicted at the May Term, 1914, Superior Court, Wake County, upon a charge of violating § 5 by refusing, in the preceding January, to permit a citizen to inspect its record showing shipments of spirituous and malt liquors transported from Virginia into that county, said record containing the "names of the consignors, consignees, date of the receipt and delivery of said shipments, and to whom delivered."

The jury returned a special verdict in which they found:

"That R. L. Davis, on a date prior to the starting of this prosecution, he being at that time a citizen of the county of Wake, State of North Carolina, went to the office of the defendant company during its business hours, and while said office was open, and demanded of the agent that he be allowed to inspect the book kept by the defendant showing shipments of liquor from points outside of the State of North Carolina to the city of Raleigh"; "the agent of the defendant stated that he was instructed to and did refuse to allow . . . the inspection"; "Davis had no legal process and did not make any demand under any legal process, and at the time of the alleged demand he was neither a State nor Federal officer of any kind of any State or Territory"; "he was seeking information from said book for the purpose of prosecuting persons suspected of violating the law of North Carolina"; and "was seeking general information as to shipments of whiskey into the city of Raleigh from points in another State, and that he had in his mind specially an effort to see what evidence could be procured against one or more specific parties in the city of Raleigh, meaning by the words 'general information' that he was seeking to ascertain who were the consignees of liquor and the quantities they were receiving, for the purpose of prosecuting such parties as may be charged or suspected with the violation

of the prohibition laws of the State"; and that he "had no authority except that which existed, if any, by virtue of the fact that he was at that time a citizen of the State."

Upon this special verdict the State Supreme Court adjudged plaintiff in error guilty as charged, 169 N. Car. 295; and it now maintains the judgment is erroneous, for reasons following:

I. Section 5, c. 44, *supra*, is void because an attempt by the State to regulate interstate commerce, in that it imposes as a condition precedent to delivery that the carrier shall keep a separate book containing name of person to whom liquor is shipped, amount and kind received, date of receipt and delivery, by whom and to whom delivered; and the consignee is required to receipt therefor before delivery.

II. In order to comply with § 5 by permitting records of interstate shipments of liquor to be inspected by a mere citizen, the carrier would necessarily violate the provisions of § 15, Act to Regulate Commerce, as amended June 18, 1910 (36 Stat. 539, 551, 553), which prohibit such action except under circumstances specified. (These are copied below.) [1]

---

[1] "An Act to Regulate Commerce," as amended June 18, 1910 (36 Stat. 539, 551, 553).

"Section 15. . . .

"It shall be unlawful for any common carrier subject to the provisions of this Act, or any officer, agent, or employee of such common carrier, or for any other person or corporation lawfully authorized by such common carrier to receive information therefrom, knowingly to disclose to or permit to be acquired by any person or corporation other than the shipper or consignee, without the consent of such shipper or consignee, any information concerning the nature, kind, quantity, destination, consignee, or routing of any property tendered or delivered to such common carrier for interstate transportation, which information may be used to the detriment or prejudice of such shipper or consignee, or which may improperly disclose his business transactions to a competitor; and it shall also be unlawful for any person or corporation to solicit or knowingly receive any such information which may be so

III. The Webb-Kenyon Law (Act of Congress, March 1, 1913, entitled "An Act divesting intoxicating liquors of their interstate character in certain cases," 37 Stat. 699) cannot affect the application of these principles to shipments destined to points in Wake County, because it relates to liquors intended to be received, possessed, sold or used in violation of state law; and to receive or possess liquor in any quantity in that county is not unlawful.

For some years it has been the established policy of North Carolina, "approved by popular vote and expressed and enforced by the general and many local statutes, that, except in very restricted instances, the manufacturing and sale of intoxicating liquors shall not be allowed." *Smith* v. *Express Company* (1914), 166 N. Car. 155, 157. Since our decision in *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311, 320, 324, it has not been open to serious question that the Webb-Kenyon Law is a valid enactment; that "its purpose was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in States contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught"; and that under it a State may inhibit ship-

---

used; *Provided,* That nothing in this Act shall be construed to prevent the giving of such information in response to any legal process issued under the authority of any state or federal court, or to any officer or agent of the Government of the United States, or of any State or Territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime; or information given by a common carried to another carrier or its duly authorized agent, for the purpose of adjusting mutual traffic accounts in the ordinary course of business of such carriers.

"Any person, corporation, or association violating any of the provisions of the next preceding paragraph of this section shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall pay to the United States a penalty of not more than one thousand dollars."

ments therein of intoxicating liquors from another by a common carrier although intended for the consignee's personal use where such use is not actually forbidden. Plainly, therefore, after that enactment, nothing in the laws or Constitution of the United States restricted North Carolina's power to make shipment of intoxicants into Wake County a penal offence irrespective of any personal right in a consignee there to have and consume liquor of that character.

The challenged act instead of interposing an absolute bar against all such shipments, as it was within the power of the State to do, in effect permitted them upon conditions intended to secure publicity, to the end that public policy might not be set at naught by subterfuge and indirection. The greater power includes the less.

The provisions of § 15, Act to Regulate Commerce, here relied on were intended to apply to matters within the exclusive control of the Federal Government; and when by a subsequent act Congress rendered interstate shipments of intoxicating liquors subject to state legislation, those provisions necessarily ceased to be paramount in respect of them.

The judgment of the court below is

*Affirmed.*

MR. JUSTICE VAN DEVANTER dissents.