## SANCHO v. BACARDI CORPORATION OF AMERICA.

## DESTILERIA SERRALLES, Inc., v. SAME.

### Nos. 3455, 3456.

Circuit Court of Appeals, First Circuit.
Jan. 12, 1940.

William Cattron Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellant Sancho.

David A. Buckley, of New York City (Jaime Sifre, Jr., of San Juan, P. R., and H. Russell Bishop, of Washington, D. C., on the brief), for appellant Destileria Serralles, Inc.

Thomas Hunt, of Boston, Mass. (Edward S. Rogers and Jerome L. Isaacs, both of New York City, on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

McLELLAN, District Judge.

Bacardi Corporation of America, a Pennsylvania corporation, filed a bill of complaint in the District Court of the United States for Puerto Rico, seeking to enjoin the defendant, Treasurer of Puerto Rico, and others from enforcing certain Acts of the Legislature of Puerto Rico. The alleged grounds for relief are in substance that these Acts contravene the Constitution of the United States, the Organic Act of Puerto Rico and a Treaty between the United States, Cuba and other countries. The District Court, having made certain findings of fact, concluded that the legislation attacked in the bill of complaint was not a valid exercise of the police power and was repugnant to the Commerce Clause of the Constitution of the United States. The District Court also concluded that the legislation was invalid because it violates the due process clause of the Constitution of the United States and of the Organic Act of Puerto Rico and because it deprives the plaintiff, appellee, of the equal protection of the Laws for which the Organic Act provides. The final decree from which these appeals were taken by the Treasurer of Puerto Rico, defendant, and by Destileria Serralles, Inc., intervenor, reads so far as need be stated as follows:

"It is ordered, adjudged and decreed: That the defendant Rafael Sancho Bonet, Treasurer of Puerto Rico, his successors, his agents and all those acting under his authority, and the Destileria Serralles, Inc., the Puerto Rico Distilling Company, their successors, officers and agents, and any and all persons holding permits from the Treasurer of Puerto Rico under the alcoholic beverages laws of Puerto Rico, be and are hereby forever and perpetually enjoined and restrained from in any way enforcing or attempting to enforce against the plaintiff Bacardi Corporation of America the provisions of Sections 40 and 44 of Act No. 6 approved June 30, 1936, as amended by Act No. 149 approved May 15, 1937, and the provisions of Section 7 of said Act 149, insofar as said provisions prohibit complainant from marketing its products in Puerto Rico or shipping its products out of Puerto Rico with the Bacardi trade marks and labels attached thereto as now or hereafter authorized by the Federal Alcohol Administration, and from using its corporate name on its products; and also, from in any way enforcing or attempting to enforce against said plaintiff the provisions of Section 44(b) of said Act No. 6 as amended by said Act No. 149, insofar as said provisions prohibit the plaintiff from shipping its products to the United States or elsewhere in bulk; * * *"

In order that the history and declared purpose of the legislation thus stricken may appear, we set forth in the margin the pertinent portions of Act No. 115, approved May 15, 1936 and of Act No. 6, approved June 30, 1936, effective July 1, 1936, which repealed Act No. 115 and was of an experimental character and was by its terms to expire September 30, 1937.[1] Following these

[1] Act No. 115. "Alcoholic Beverage Law of Puerto Rico", approved May 15, 1936; Laws of 1936, regular session, pp. 610 et seq.

"Sec. 41.—* * *

"B. After the thirty (30) days following the taking effect of this Act, no person shall engage in the business of manufacturing, distilling, rectifying or bottling distilled spirits in Puerto Rico, unless such person is provided with a permit by the Treasurer of Puerto Rico authorizing him to engage in said business. * * *

"C. The following persons shall be entitled to permits upon application:

"(1) Every person who on February 1, 1936, possesses (possessed) a license or permit issued by the Government of Puerto Rico to engage in the business of distilling, manufacturing, rectifying, and bottling distilled spirits, and who is (was) on that date engaged in said business.

"(2) Any other person who may fully

Acts there appear in the margin the relevant provisions of Act No. 149 of 1937, including Section 1, Section 2, amending Section 40 of Act No. 6 of 1936, Section 3, amending Section 44 of the same Act, Section 4, adding Section 44(b) thereto, and

comply with the following requisites:

"(a) To file with the Treasurer of Puerto Rico an application to engage in the business of manufacturing, distilling, rectifying or bottling distilled spirits, which application shall be made in the manner prescribed by the Treasurer of Puerto Rico and shall contain, among other particulars, the following specific information:

"(I) That such person, by reason of his business experience or because of his financial position or business relations, will possibly begin operations within a reasonable period of time and that he will operate his business in accordance with both the Federal and the insular laws.

"(II) That the demand for consumption in Puerto Rico and in the rest of the United States, for the class or classes of distilled spirits to be distilled, manufactured, rectified, or bottled, exceeds the production capacity of the holders of permits under this Act, priority to be given to such persons as may have received permits under clause C, paragraph 1, of this title, as well as to the production capacity of the holders of permits granted by the Federal Alcohol Administration to distill, rectify, bottle, and/or manufacture similar distilled spirits in continental United States.

"(III) That the applicant has no intention to violate clause (h) hereinbelow transcribed.

"(IV) That the applicant has no intention to violate clause (i) hereinbelow transcribed.

"(V) That such business will not adversely affect those already established for the manufacture, distilling, rectifying, and bottling of distilled spirits in Puerto Rico."

Clauses (h) and (i) referred to under (III) and (IV) above, are as follows:

"(h) If any kind, type, or brand of distilled spirits of a foreign origin becomes nationally or internationally known by reason of its bearing or showing as its brand, trade name, or trade mark, the proper name of the manufacturer thereof, such name shall not, in any manner or form whatever, appear on the labels for any distilled spirit of said kind or type manufactured, distilled, rectified, or bottled in Puerto Rico.

"(i) The production capacity of the existing distilleries, manufacturing plants, and rectifying and bottling plants may be increased so as to meet the consumption demands for the brands now produced, or to meet the demand brought about by the manufacture of new brands not in conflict with clause (g) of this title."

Clause (g) of the same title, referred to in (i) of the title, reads as follows:

"(g) No holder of a permit under this title shall manufacture, distill, rectify, or bottle, either for himself or for others, any distilled spirit locally or nationally known under a brand, trade name, or trade mark previously used on similar products manufactured in a foreign country, or in any other place outside Puerto Rico; Provided, (1) That such limitation, aimed at protecting the industry already existing in Puerto Rico, shall not apply to any brand trade name, or trade mark used by a manufacturer, rectifier, distiller, or bottler of distilled spirits manufactured in Puerto Rico on February 1, 1936; and (2) such restrictions shall not apply to any new brand, trade name, or trade mark which may in the future be used in Puerto Rico."

Act No. 6, "Spirits and Alcoholic Beverages Act", approved June 30, 1936; Law of 1936, special session, pp. 44, et seq.

"To provide revenues for the People of Puerto Rico by levying internal-revenue taxes on alcoholic spirits and alcoholic beverages, and for the manufacture and sale thereof; to regulate the production, manufacture, importation, and sale of alcohol, spirits and alcoholic beverages, and to provide license fees therefor; to impose penalties for violations hereof; to provide funds for the administration and enforcement of the Act; to repeal Act No. 115, approved May 15, 1936, and for other purposes.

"Section 40.—Every person who in Puerto Rico manufactures or places in any container alcoholic beverages taxable under this Act, shall place on each container a label indicating the following particulars: exact contents of the container; alcoholic content by volume; the place where it was distilled or manufactured, and the name of the bottler or canner. If said alcoholic beverage is rum, said person shall be obliged to have appear on the label the following phrase in English: 'Puerto Rican Rum', in letters the size of which the Treasurer shall by regulation prescribe, as well as the name of the person owning the distillery where said rum was distilled. On the label of every alcoholic beverage shall also appear the word 'Distilled', 'Rectified', or 'Blended', as the case may

Section 7 thereof, to which the decree of the District Court refers.

These sections of Act No. 149 prohibit the manufacture (by holders of the requisite permit) of alcoholic beverages on which there appears whether on the container or elsewhere "any trade mark, brand, trade name, commercial name, corporation name

be, in accordance with such regulations as the Treasurer may prescribe for the purpose. (at p. 76.)

"Section 44.—No holder of a permit granted in accordance with the provisions of this Act shall distill, rectify, manufacture, bottle or can, any distilled spirit, under a trade mark or commercial name, because such trade mark or commercial name has been used on similar products manufactured in Puerto Rico or outside of the Island; Provided, That this limitation shall not apply to any trade mark or commercial name, used for products manufactured in Puerto Rico prior to the approval of this Act; and Provided, further, That distilled spirits, with the exception of ethylic alcohol, 180° proof or more, industrial alcohol, alcohol denatured according to authorized formulas, and denatured rum for industrial purposes, may be exported from Puerto Rico only in containers holding not more than one gallon, and each container shall bear the corresponding label containing the information prescribed by law and the regulations of the Treasurer."

Act No. 149, approved May 15, 1937; Laws of 1937, regular session pp. 392–396.

"Be it enacted by the Legislature of Puerto Rico:

"Section 1.—Section 1 is hereby amended by adding Section 1 (b) to Act No. 6, approved June 30, 1936, entitled 'An Act to provide revenues for The People of Puerto Rico by levying internal-revenue taxes on alcoholic spirits and alcoholic beverages, and for the manufacture and sale thereof; to regulate the production, manufacture, importation, and sale of alcohol, spirits and alcoholic beverages, and to provide license fees therefor; to impose penalties for violations hereof; to provide funds for the administration and enforcement of the Act; to repeal Act No. 115, approved May 15, 1936, and for other purposes', which section shall be as follows:

" 'Section 1. The short title of this Act shall be Spirits and Alcoholic Beverages Act.'

" 'Section 1 (b).—Declaration of Policy. It has been and is the intention and the policy of this Legislature to protect the renascent liquor industry of Puerto Rico from all competition by foreign capital so as to avoid the increase and growth of financial absenteeism and to favor said domestic industry so that it may receive

adequate protection against any unfair competition in the Puerto Rican market, the continental American market, and in any other possible purchasing market.'

"Section 2.—Section 40 of said Act No. 6, approved June 30, 1936, is hereby amended to read as follows:

" 'Section 40.—Every person who in Puerto Rico manufactures or places in any container alcoholic beverages taxable under this Act, shall place on each container a label indicating the following particulars: Exact contents of the container; alcoholic content by volume; the place where it was distilled or manufactured, and the name of the bottler or canner. If said alcoholic beverage is rum, said person shall be obliged to have appear prominently on the label the following phrase in English Puerto Rican Rum, in letters not less than five-sixteenths (5/16) of an inch high and of lines of one-sixteenth (1/16) of an inch or more in width, said phrase to be not less than three (3) inches long. For containers of four-fifths (4/5) of a pint and less the phrase Puerto Rican Rum must appear on the label in letters not less than one-eighth (1/8) of an inch high, said phrase to be not less than one and one-half (1½) inches long. On the label of every alcoholic beverage shall also appear the word distilled, rectified, or blended, as the case may be, in accordance with such regulations as the Treasurer may prescribe for the purpose; Provided, further, That the trade mark or name of the rum must appear prominently on the label in letters of a size at least three times the size of the letters in which the name of the manufacturers, distiller, rectifier, bottler, or canner appears.'

"Section 3.—Section 44 of said Act No. 6, approved June 30, 1936, is hereby amended to read as follows:

" 'Section 44.—No holder of a permit granted in accordance with the provisions of this or of any other Act shall distill, rectify, manufacture, bottle, or can any distilled spirits, rectified spirits, or alcoholic beverages on which there appears, whether on the container, label, stopper, or elsewhere, any trade mark, brand, trade name, commercial name, corporation name, or any other designation, if said trade mark, brand, trade name, commercial name, corporation name, or any other designation, design, or draw-

or any other designation if said trade mark, brand, trade name, commercial name, corporation name or other designation, design or drawing has been used previously * * anywhere outside the Island of Puerto Rico." This limitation is made inapplicable to designations by a manufacturer, bottler or canner of distilled spirits manufactured in Puerto Rico on or before February 1, 1936. By Section 7, this limitation or proviso is made applicable in regard to trade marks only to such "as shall have been used exclusively in the Continental United States * * * prior to February 1st, 1936, provided such trade marks shall not have been used, in whole or in part * * * outside of the Continental United States, at any time prior to said date."

Act No. 149, Section 4, also provides that with exceptions not here relevant distilled spirits may be shipped or exported from Puerto Rico or imported into Puerto Rico "only in containers holding not more than one gallon".

 Bacardi Corporation of America aimed several blows at this legislation, and some of them took effect. We refrain, for the time being, from comment upon the apparent object and the avowed purpose of the Puerto Rican Legislature, because we want first to consider a question which needs for its determination nothing of this sort. The District Court was impressed with the suggestion that the commerce clause of the Constitution of the United States invalidates the statutory provisions as to the use of trade marks and as to the maximum size of the containers required for shipment. The commerce clause (U.S. C.A. Constitution, Article 1, Section 8, Clause 3) grants the Congress power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." By necessary implication, it prevents a state from regulating such commerce. But Puerto Rico is not a state. It is an organized Territory of the United States though not yet "incorporated" into the Union, Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 and the indubitable right of the Congress to regulate the commerce of Puerto Rico is founded on the Constitutional power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." (Constitution, Article IV, Section

ing has been used previously, in whole or in part, directly or indirectly, or in any other manner, anywhere outside of the Island of Puerto Rico; Provided, That this limitation shall not apply to the designations used by a distiller, rectifier, manufacturer, bottler, or canner of distilled spirits manufactured in Puerto Rico on or before February 1, 1936.'

"Section 4.—Section 44 (b) is added to said Act No. 6, approved June 30, 1936, which section reads as follows:

" 'Section 44 (b).—Distilled spirits, with the exception of ethylic alcohol, 180° proof or more, industrial alcohol, alcohol denatured according to authorized formulas, and denatured rum for industrial purposes may be shipped or exported from Puerto Rico to foreign countries, to the continental United States, or to any of its territories or possessions, or imported into Puerto Rico, only in containers holding not more than one gallon, and each container shall bear the corresponding label containing the information prescribed by law and by the regulations of the Treasurer; Provided, That where any rectifier presents to the Treasurer a sworn application stating that he wishes to withdraw from business and to liquidate his stock of rum, provided said stock does not exceed 30,000 gallons at the equivalence of 100° proof, the Treasurer is empowered to authorize the sale of such stock in barrels of 40 gallons or more, either for sale in Puerto Rico or for exportation to the United States or to any foreign country. The rectifier obtaining said authorization shall show that the liquidation will be carried out in good faith for the purpose of discontinuing his business as such, by furnishing the Treasurer with such details and reports as he may request in order to be satisfied that the liquidation is made in good faith, and in such case, neither the natural nor the artificial person securing such authorization from the Treasurer, nor any officer thereof, may obtain a new permit to rectify before the expiration of five years counting from the date on which the permit requested was granted, and the present permit shall be cancelled.'

"Section 7.—In regard to trade marks, the provisions of the Proviso of Section 44 of Act No. 6, approved June 30, 1936, and which is hereby amended, shall be applicable only to such trade marks as shall have been used exclusively in the continental United States by any distiller, rectifier, manufacturer, bottler, or canner of distilled spirits, prior to February 1, 1936, provided such trade marks have not been used, in whole or in part, by a distiller, rectifier, manufacturer, bottler, or canner of distilled spirits outside of the continental United States, at any time prior to said date."

3, Clause 2). The power is in no direct sense dependent upon the Commerce clause which as this court has said "does not extend to Puerto Rico". Lugo v. Suazo, 1 Cir., 59 F.2d 386, 390. Cf. Inter-Island Steam Navigation Co. v. Hawaii, 9 Cir., 96 F.2d 412.

The decree of the District Court declaring such legislation unconstitutional can not be affirmed upon the ground that the Puerto Rican statutes violate the commerce clause of the Constitution of the United States.

The next question is whether the Puerto Rican statutes constitute a valid exercise of the police power of the Insular Legislature in view of the due process clause of the Constitution of the United States and of the Organic Act for Puerto Rico. And in discussing the Insular police power we shall consider whether it is relevantly narrowed either by the Federal Alcoholic Administration Act or by the Convention between the United States and Cuba.

■ The police power of the Puerto Rican Legislature depends upon the Organic Act for Puerto Rico passed by the Congress of the United States in 1917. This Act organizes the Territory and erects "the typical American governmental structure, consisting of three independent · departments—legislative, executive and judicial." Puerto Rico v. Shell Co., supra [302 U.S. 253, 58 S.Ct. 171, 82 L.Ed. 235]. To the Insular Legislature, the Organic Act extends legislative authority as "to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal * * * all laws and ordinances of every character in force in Porto Rico or municipality or district thereof on March 2, 1917, in so far as * * * alteration, amendment, modification, or repeal may be consistent with the provisions of this chapter." U.S.Code, Title 48, Section 821, 48 U.S.C.A. § 821.

Clearly enough, the Organic Act of Puerto Rico authorizes legislation for the control of the manufacture and traffic in rum and other ardent spirits unless such legislation trespasses upon a field forbidden by the Constitution or by the Congress.

The appellee urges that the territorial legislation is invalid because it conflicts with the Federal Alcohol Administration Act, 27 U.S.C.A. §§ 201–211, and as examples of such asserted conflict, says:

"(a) American Bacardi has been authorized under the Federal Law to use on its product to be shipped from Puerto Rico certain labels which have been presented in evidence. Under the local statute the plaintiff is prohibited from using them (Section 44 of Law No. 6);

"(b) The Federal statute authorizes shipment in bulk in containers of more than one gallon, while the local statute (Section 44(b) prohibits such shipments."

■ As to labels, the Federal Alcohol Administration Act, aiming at unfair competition and other unlawful practices, forbids the introduction into interstate or foreign commerce of liquor unless labelled in accordance with regulations established by the Administration in such a way as to prevent deception of the consumer and the like. Such being the purpose of the Act, its effect was not to deprive the Legislature of Puerto Rico of the right to enact the territorial statute restricting the use of labels.

■ Nor does it seem to us correct to say, as does the appellee, that "the Federal statute authorizes shipment in bulk in containers of more than one gallon". What the statute does is to forbid the disposition of liquor in bulk except in pursuance of regulations of the Federal Alcohol Administration. We cannot read into this statute an intent upon the part of the Congress to bar the territorial statutes governing shipments in bulk.

Consistent with the view that the Federal Alcohol Administration Act was not intended to deprive territories of the right, in the exercise of their police powers, to limit the use of labels, or to limit the size of containers to be used under certain circumstances, is the form of permit received by the appellee, which is expressly "conditioned upon compliance with the laws of all states" in which the applicant engages in business. We are concerned here not with Congressional power but with the question whether Congress has so exercised that power as to close the door to the territorial legislation here considered. In McDermott v. Wisconsin, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39, on which the appellee relies, the right of a state to impose burdens upon or discriminate against Interstate Commerce was at stake and we think that case not at all controlling upon the present aspect of the case at bar. The District Court

was right in not including among the conclusions of law requested by the appellee the ruling "that Sections 40, 44 and 44(b) of Act No. 6 of June 30, 1936 as amended by Act No. 149 of May 15, 1937 are invalid as contrary to the Federal Alcoholic Administration Act."

■ The appellee which had acquired by contract the right to use the trade marks of the Cuban Bacardi Corporation urges that the District Judge erred in the refusal to rule in substance that the legislation herein question "prohibiting the use of certain trade marks conflicts with the * * * trade mark convention of February 20, 1929, between the United States and Cuba and is, therefor, invalid." 46 Stat. 2907. As to this contention the District Judge said:

"It is unnecessary to express any opinion as to the allegations in the complaint to the effect that the challenged legislation violates the Treaty between the United States and Cuba. If it were necessary I would be disposed to hold against the contention of the plaintiff. The Treaty gives no preferential advantage to a citizen of Cuba. Any right or privilege which the Treaty creates would be subject to a proper exercise of the police power."

A summarization of the Convention would prolong this opinion unduly and is needless. Its purpose was to prevent piracy of trade marks, a matter which is not here involved. It was not intended to have and does not have the effect of invalidating local laws and regulations of the type here in question. We think the District Court's refusal to rule that the legislation was invalid by virtue of the Convention between the United States and Cuba was right.

■ We come now to the question whether the provisions of the Puerto Rican legislation forbidding in substance, and subject to limitations heretofore stated and hereafter referred to, the making of rum, on the container of which or elsewhere, there appears a trade mark or corporation name previously used outside of Puerto Rico and forbidding the shipping of rum in containers holding more than a gallon, violate the due process clause appearing both in the Constitution of the United States and the Organic Act of Puerto Rico.

The due process clause of the Fifth Amendment to the Constitution, U.S.C.A. is so identical with Section 2 of the Organic Act, 48 U.S.C.A. § 737, providing against the enactment of any law depriving any person of life, liberty or property without due process of law as to preclude any detailed discussion of what parts of the Federal Constitution extend to Puerto Rico.

The District Court ruled that "the provisions of Act No. 6 of June 30, 1936, as amended by Act No. 149 approved May 15, 1937, prohibiting the use of certain trade marks and corporate names, * * * violate the due process clause of the Constitution of the United States and the Organic Act of Puerto Rico and are invalid." A like ruling was made with reference to Section 44(b) of Act No. 6 as added by Act No. 149 of 1937 "insofar as it prohibits the exportation of rum legally manufactured in Puerto Rico in containers of more than a gallon." In his opinion, the District Judge having called attention to the intent and policy of the statutes as expressed by the Legislature and the restrictive use of trade marks and corporate names for which the statutes provide, expressed the view that "it is difficult to see how the 'evil' mentioned in the preamble was corrected by the attempted 'remedy'". Later, the court said:

"If the Legislature of Puerto Rico desires to eliminate all competition by foreign capital as a means of protecting the liquor industry, and so as to avoid the increase and growth of financial absenteeism, there is a very simple and direct way to accomplish this purpose. I know of no reason why the Legislature of Puerto Rico may not, as Pennsylvania has done, deny to any foreign corporation or non-resident the right to manufacture or sell rum within Puerto Rico. It may limit the number of licenses which may be granted even to residents and citizens of Puerto Rico. I do not mean to say that such a policy would be wise or desirable. That is a legislative question. But, if the evil which the legislation here under consideration condemns is to be eliminated, some method other than that provided must be adopted."

In saying that Puerto Rico could constitutionally "deny any foreign corporation or non-resident the right to manufacture or sell rum within Puerto Rico", the District Court was right. La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362, supporting the constitutionality of the legislative exclusion of non-resident insurance agents, and Premier-Pabst Sales Co., v. Grosscup, 298 U.S. 226, 56 S.Ct. 754, 80 L.Ed. 1155, where the constitutionality of an act forbidding the sale of beer within

Pennsylvania unless duly licensed, and forbidding the issue of a license to a corporation unless all of its officers and directors and 51% of its stockholders were and for two years had been residents of the state, was conceded.

But we think that having the absolute power to prohibit foreign corporations from manufacturing or selling intoxicants the Puerto Rican Legislature had the right to prescribe the conditions under which such business might be conducted. The greater power includes the less. Ziffrin v. Reeves, 60 S.Ct. 163, 84 L.Ed. ——, decided November 13, 1939 by the Supreme Court of the United States; Seaboard Air Line Railway v. North Carolina, 245 U.S. 298, 304, 38 S.Ct. 96, 62 L.Ed. 299. To say the least, the legislative power to prohibit involves a wide discretion as to the conditions which may be imposed in lieu of total prohibition.

The legislative purpose to protect the renascent liquor industry of Puerto Rico from all competition by foreign capital, so as to avoid the increase and growth of financial absenteeism and to favor this domestic industry and to protect it against any unfair competition, was legitimate. And we may not strike down any legislation designed to effectuate such purpose just because it may be thought unlikely completely to accomplish the desired result. Whether the statutes prohibiting the use of certain trade marks and corporate names and whether the legislation forbidding shipments in bulk (presumably passed in part to prevent an evasion of the trade mark prohibition) will accomplish the desired result is not the question for our determination. The Legislature of Puerto Rico possessing "substantially all the local legislation powers of a state legislature, in all respects here involved" including the local police powers particularly applicable to the liquor business, has manifested its faith in the efficacy of its policy through three successive sessions, the session of 1936, the special session of 1936 and the regular session of 1937, and it is not for us to say whether its faith is well founded. Even if we knew enough about the matter to form a judgment as to the wisdom of these statutes we should be exceeding our function were we to attempt to substitute our judgment for that of the Legislature. As said by the Supreme Court, in Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469 "with the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. * * Times without number we have said that the Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power."

Bearing in mind that doubt is not enough, that unconstitutionality must clearly appear in order to warrant us in holding legislation void, and being unable to say that the statutes here questioned so lack any reasonable basis as to be arbitrary or capricious, we think they should not be invalidated as repugnant to the due process clause of the Constitution of the United States or the Organic Act for Puerto Rico. St. Joseph Stock Yards Company v. United States, 298 U.S. 38, 51, 56 S.Ct. 720, 80 L. Ed. 1033; Standard Oil Co. v. Marysville, 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330.

The District Court ruled that "the provisions of Act No. 6 of June 30, 1936 as amended by Act No. 149 approved May 15, 1937, which restrict the use of certain trade marks and corporate names, discriminate arbitrarily against the plaintiff; violate the equal protection clause of the Constitution of the United States and the Organic Act of Puerto Rico and are invalid."

It would seem that the equal protection clause appearing in the 14th Amendment of the Constitution of the United States, U.S.C.A., limits the powers of the states and is inapplicable to Puerto Rico. But this is of no importance here because the Organic Act for Puerto Rico expressly provides that "no law shall be enacted in Porto Rico which shall * * * deny to any person therein the equal protection of the laws." The statutory provision forbidding the shipping of rum in bulk, which applies to all shippers, need not be considered in this connection. The above ruling relates only to the provisions prohibiting the use of certain trade marks and corporate names. As to this aspect of the case, the District Court said, "whether so intended or not the Act has the appearance of being so framed as to exclude only the plaintiff. It is difficult to conceive

of a more glaring discrimination." We think the court's ruling that the statutes are invalid as constituting a denial of the equal protection of the laws may not stand. It is true that when this case was heard by the District Judge, the appellee was the only manufacturer affected by the particular statutory provisions here considered. But they applied to all who might later engage in the business. The clause in the Act permitting continuance of the use of labels or brands already established in Puerto Rico prior to February 1, 1936, does not unduly discriminate against foreign corporations which had not entered the field before that time. We can not say without doubt upon the subject, that such a statute is unusual or capricious or unjustly discriminatory. In New York Rapid Transit Corp. v. New York, 303 U.S. 573, 578, 58 S.Ct. 721, 724, 82 L.Ed. 1024, it is said: "Although the wide discretion as to classification retained by a Legislature often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. * * * Indeed, it has long been the law under the Fourteenth Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it.'" See also Borden's Farm Products Co. v. Ten Eyck, 297 U.S. 251, 56 S.Ct. 453, 80 L.Ed. 669; United States v. Rock Royal Co-op. Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. Upon the principles heretofore stated and which must govern us in determining the constitutionality of an act of a legislature possessed of ample police powers, we cannot declare any of the statutory provisions here questioned repugnant to the equal protection clause of the Organic Act of Puerto Rico or if applicable the same clause appearing in the 14th Amendment to the Constitution of the United States.

We have refrained from stating many of the facts found by the District Court as to the quality of the appellee's product, the amounts expended on its plant and equipment, whether before or after receiving the requisite permit for manufacturing liquor, or whether before or after notice of the legislation here questioned, because none of these considerations changes the result. The validity of these statutes can not be made to depend upon the appellee's expectation that in the exercise of its police powers a law making body may not change its policies or its laws. Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424.

Nor have we deemed it necessary to state the facts pertinent thereto or to decide whether as urged on behalf of the appellants the plaintiff appellee is estopped to question the validity of the challenged statutes. We think the provisions of the Acts here assailed are valid.

The decree of the District Court is reversed, with costs on appeal to each appellant, and the case is remanded to that court with directions to dissolve the injunction and to dismiss the bill of complaint.