459 F.2d 387
 PAN AMERICAN WORLD AIRWAYS, INC., Appellant,
v.
The DULY AUTHORIZED GOVERNMENT OF the VIRGIN ISLANDS, and
The Commissioner of Finance of the Government of
the Virgin Islands.
 No. 19524.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 25, 1972.
Decided April 21, 1972.
 
 Paul F. Mickey, Steptoe & Johnson, Washington, D. C., for appellant.
 Ronald Tonkin, Government of the Virgin Islands, Department of Law, St. Thomas, V. I., for appellee.
 Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Pan American World Airways, Inc. (Pan American), the plaintiff in the District Court of the Virgin Islands, appeals from an order of that court, 315 F.Supp. 746, dismissing its complaint for declaratory and injunctive relief. The defendants are the duly authorized Government of the Virgin Islands and the Commissioner of Finance of the Government of the Virgin Islands. On August 15, 1967 Pan American filed a complaint seeking to have the court declare that the gross receipts tax imposed by 33 V.I.C. Sec. 43(a), (b), as applied to an international air carrier, is unconstitutional, and to enjoin the defendants from application of that tax to it. Pan American is an air carrier whose business is entirely interstate and foreign. It contends that the 2% gross receipts tax is an unapportioned gross receipts tax and therefore an impermissible burden on such commerce in violation of the commerce clause and an impermissible extension of Virgin Islands taxing jurisdiction in violation of the fourteenth amendment and the due process clause of the Virgin Islands Organic Act. 48 U.S.C. Sec. 1561. In September 1967 the Attorney General of the Virgin Islands filed an answer on behalf of both defendants in which he alleged:
 
 
 2
 "7. That the gross receipts tax of the Virgin Islands (33 V.I.C. Sec. 43(a), (b)) is apportioned to the plaintiff's activities in the Virgin Islands.
 
 
 3
 8. That the plaintiff has failed to pay its gross receipts tax liability for the calendar year 1964 to the present, although demand for the same has been made."
 
 
 4
 On December 12, 1967 the parties filed a stipulation, approved by the court, that collection of the gross receipts tax and penalties the subject of the litigation be held in abeyance pending final determination of the action. Thereafter disposition of the action was postponed from time to time apparently while the parties tried to agree upon an apportionment formula which would satisfy both the Government of the Virgin Islands and Pan American. These efforts were not successful, and on April 8, 1970 the parties filed a stipulation of facts. After hearing argument the court filed an opinion in which it rejected Pan American's commerce clause and due process arguments. On October 5, 1970 it entered an order granting the defendant's motion to dismiss the complaint.
 
 
 5
 Although it framed its order as one granting the defendants' motion to dismiss the complaint it is clear that the court intended that order to be a determination on the merits rather than a dismissal on jurisdictional grounds. The opinion declares that 33 V.I.C. Sec. 43 et seq. meets both commerce clause and due process standards for apportionment of a tax on gross receipts. In the district court the defendants appear to have conceded the jurisdiction of the court to entertain such an action for declaratory and injunctive relief.[1] The basis for the district court's jurisdiction is significant because of a contention advanced by the Government of the Virgin Islands on this appeal. That contention, not considered by the district court, is that the apportionment issue is not properly before us. The pleadings and the stipulation of facts establish that Pan American neither filed the required returns nor paid the tax demanded by the Commissioner of Finance for the years in question. The defendants urge that the only question properly before the court in such a case is whether the statutory scheme, which permits the Commissioner to make an arbitrary assessment against a delinquent taxpayer, meets due process requirements. That statutory scheme is set forth in 33 V.I. C. Sec. 45 as follows:
 
 
 6
 "(a) Every person, partnership, firm, corporation, or other business association failing to file reports or pay the total amount of tax within the time required by this chapter is liable for penalty at the rate of five (5) percent per month or any fraction of a month, but not exceeding 25 percent in the aggregate; Provided, That if the gross receipts tax or excise tax report is not received within 30 days after the due date of such report, the Commissioner of Finance shall make an arbitrary determination of the tax due for the delinquent taxpayer, and after giving him due notice, proceed to collect the tax plus penalties as provided by this chapter. The report shall consist of an estimated amount of tax due and chargeable against the delinquent taxpayer.
 
 
 7
 (b) When the arbitrary determination of tax due is made, as provided in subsection (a) of this section, the taxpayer shall be billed for said amount and may be proceeded against in any way that any other delinquent taxpayer may be proceeded against including the levy and attachment and sale of property, whether real or personal; Provided, however, That the taxpayer may file a petition in the Municipal Court asking that such execution be stayed, pending determination of the actual amount due. The Court shall advance such petition and shall hear such relevant evidence as the taxpayer and tax administration authority may produce and shall, in the light of such evidence, arrive at the amount the taxpayer should have paid had he complied with the law. Whereupon, the taxpayer shall be required to pay such amount plus any accrued penalty and Court costs."
 
 
 8
 The Commissioner's determination has not been challenged in the municipal court. Although not articulated in these precise terms it is apparently the Government's present position that since Pan American did not challenge the assessment in the municipal court it is not now open to challenge if the procedure for such challenge met due process requirements.
 
 
 9
 The statute providing for an arbitrary assessment, notice, opportunity for a stay of execution and for a hearing in the municipal court on the amount due provides to the taxpayer a plain, speedy and efficient remedy. In such circumstances if the Virgin Islands were a state and the district court were an Article III court it could not enjoin, suspend or restrain the assessment, levy or collection of the tax. 28 U.S.C. Sec. 1341. Cf. Georgia R.R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). Under the judiciary subchapter of the Organic Act, however, the District Court of the Virgin Islands has both federal question jurisdiction and general original jurisdiction in all other causes in the Virgin Islands except in those cases where Congress has placed exclusive jurisdiction elsewhere. 48 U.S.C. Sec. 1612. There is no indication that Congress intended that the district court, in the exercise of either its federal question jurisdiction or its original Virgin Islands jurisdiction should be subject to the strictures of 28 U.S.C. Sec. 1341. Indeed no such notions of federalism as underlie limitations on the power of the federal district courts to enjoin certain state actions are applicable to the territories.
 
 
 10
 The general grant of legislative power, 48 U.S.C. Sec. 1574, may not be construed as permitting the legislature to limit the jurisdiction of the district court. Nor does 48 U.S.C. Sec. 1613, which permits the establishment of inferior courts by local law, permit the legislature, when it establishes such inferior courts, except in specified cases, to limit the concurrent jurisdiction of the district court.[2]
 
 
 11
 Properly construed, however, 33 V.I.C. Sec. 45 is not a limitation on the jurisdiction of the district court. Section 45(b) provides for judicial review of an arbitrary assessment of gross receipts taxes in the municipal court. The decision of that court is appealable to the district court, where the scope of judicial review is much narrower than if the district court were exercising original jurisdiction. 4 V.I.C. Sec. 32. If the availability of a remedy under 33 V.I.C. Sec. 45(b) were construed as prohibiting declaratory or injunctive relief in an original action in the district court, that section would conflict with 48 U.S.C. Sec. 1612. We do not think the Virgin Islands legislature intended any such conflict. Section 45(b) applies only to review of arbitrary assessments in cases of delinquency. The gross receipts tax statute makes no provision for judicial review by nondelinquent taxpayers. In these cases judicial review of the Commissioner's computations is available in the district court under 48 U.S.C. Sec. 1612. Section 45(b) does not say that such judicial review is not also available in the district court for delinquent taxpayers. The section only enacts an additional, alternative, and possibly more expeditious remedy for relief from execution of a lien for an arbitrary deficiency assessment. At most the availability of the Sec. 45(b) legal remedy is only a factor which the district court may take into consideration in deciding whether to grant the extraordinary equitable remedy of an injunction.
 
 
 12
 Thus we reject the Government's contention that the district court should not have considered the merits of the dispute over the assessment. That court had jurisdiction to make the declaration which it made and the formula under which the assessment was made is appropriately before us on the merits.
 
 
 13
 Section 41 of Title 33, imposing the gross receipts tax, reads:
 
 
 14
 "Beginning July 1, 1959, there shall be levied upon, collected from and paid by persons, partnerships, firms, corporations or other associations engaged in trades or other business in the Virgin Islands, the taxes hereinafter provided; such taxes to be computed in proportion to the extent of the trade carried on or of the business done, as set forth in the remaining sections of this chapter."[3]
 
 
 15
 In Port Construction Co. v. Government of Virgin Islands, 359 F.2d 663 (3d Cir. 1966), we held that Sec. 41 does not manifest an intent to tax the gross receipts from extra-territorial business. It reaches only gross receipts from business in the Virgin Islands, and so construed it is facially constitutional. Port Construction did not, however, involve a problem of allocation. There a foreign corporation was taxed on the gross receipts derived entirely from its performance of a construction contract in the Virgin Islands. In this case it is not disputed that Pan American does some business in the Virgin Islands. The objection is that the apportionment formula selected by the Commissioner reaches not only gross receipts from that business but also gross receipts from business conducted in the United States and internationally.
 
 
 16
 The apportionment formula selected by the Commissioner is set forth in the stipulation of facts:
 
 
 17
 "9. The defendant . . . has demanded . . . a tax of two percent of its gross receipts from all passenger tickets sold in the Virgin Islands . . . and two percent of all revenues received in the Virgin Islands for carriage of excess baggage or freight, irrespective of origin and destination of such traffic. . . ."
 
 
 18
 This formula reaches gross receipts for ticket sales made by Pan American's offices in the Virgin Islands both for Pan American's flights and for those of other airlines. It reaches gross receipts for ticket sales made in the Virgin Islands for Pan American by travel agents and other air carriers who sell tickets there for Pan American on commission. It reaches gross receipts for excess baggage or freight actually collected in the Virgin Islands. The taxing incident, in other words, is the actual receipt by Pan American in the Virgin Islands of revenue from any source.
 
 
 19
 Pan American does not claim that it is not present in the Virgin Islands, or that its presence there does not amount to doing business. See General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). It points out, however, that the Commissioner's formula permits the imposition of a tax on revenues for tickets between destinations not remotely connected with the Virgin Islands. This, it claims, amounts to (1) a tax on gross receipts from business not performed in the Virgin Islands and (2) a direct tax on interstate and foreign commerce.
 
 
 20
 The Government responds that the Commissioner's formula is actually quite generous, since it reaches only revenue actually received by Pan American in the Virgin Islands. It does not impose a tax on revenue received outside the Virgin Islands for travel to the islands, or even for all travel between St. Thomas and St. Croix.
 
 
 21
 Conceding that it is present in the Virgin Islands, that it receives gross receipts there, and that its presence there amounts to doing business, Pan American's position is that its business there is solely the business of providing transportation in interstate and foreign commerce. That position is undoubtedly sound. The conclusions which Pan American would have us draw from it, however, are not sound. It would have us hold, first, that any tax on gross receipts from sale of the service of transportation in interstate or foreign commerce is an impermissible burden on such commerce. Alternatively it would have us hold that the only permissible allocation would be an imposition of tax on so much of its receipts as represents revenues for actual transportation services performed in the territory of the Virgin Islands. It suggests that this sum could be determined by measuring its total miles flown in the territory of the Virgin Islands for a typical year (51,239) against total miles flown in that year elsewhere (199,000,000) and applying the percentage as the percentage of its total revenue for that year ($943,203,000) which could be taxed. This formula would have permitted a 2% tax on $241,000, or $4,810.00. The Commissioner's formula produces a tax of $50,956.38 on gross receipts of $2,547,819. In contending that mileage within the territory versus total mileage is the only permissible allocation formula Pan American relies principally upon Central Greyhound Lines, Inc. of New York v. Mealey, 334 U.S. 653, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948). That case reiterates the common statement that an unapportioned gross receipts tax on interstate transportation makes that transportation bear more than "a fair share of the cost of the local government whose protection it enjoys." 334 U.S. at 663, 68 S.Ct. at 1266, citing Freeman v. Hewit, 329 U.S. 249, 253, 67 S.Ct. 274, 91 L.Ed. 265 (1946). In Central Greyhound Lines Inc. of New York v. Mealey, however, the New York courts, unlike the Commissioner in this case, had construed their statute as levying an unapportioned gross receipts tax on the entire gross receipts from an interstate transportation transaction.[4] The Supreme Court held that the entire tax need not fall. It said:
 
 
 22
 "The tax may be 'fairly apportioned' to the 'business done within the state by a fair method of apportionment.' Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255, [58 S.Ct. 546, 548, 82 L.Ed. 823]. There is no dispute as to feasibility in apportioning this tax. On the record before us the tax may constitutionally be sustained on the receipts from the transportation apportioned as to the mileage within the State. See Ratterman v. Western Union Telegraph Co., 127 U. S. 411, 427-[428, 8 S.Ct. 1127, 1132, 32 L.Ed. 229]. There is no question as to the fairness of the suggested method of apportionment. Compare Maine v. Grand Trunk R. Co., [142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994] with New Jersey Bell Telephone Co. v. State Board of Taxes and Assessments, 280 U.S. 338, [50 S.Ct. 111, 74 L.Ed. 463] cf. Wallace v. Hines, 253 U.S. 66, [40 S.Ct. 435, 64 L.Ed. 782]. Both appellant and appellee have indicated here that, as a matter of construction, the statute under consideration permits such apportionment, but that is a matter for the New York courts to determine." 334 U.S. at 663, 68 S.Ct. at 1266.
 
 
 23
 The case was remanded for such a determination. It supports the proposition that the apportionment formula suggested by Pan American would be constitutional, but it is no authority for the proposition that allocation based on mileage is the only permissible form of allocation. It is perfectly evident that even with ground transportation allocation based upon mileage affords only the most rough and ready approximation of a relationship to the fair share of the cost of the local government whose protection is afforded. A terminal state with little mileage may be furnishing far more and far more costly services than a transit state. Air transportation is an a fortiori case, for in reality the terminal states bear almost the entire cost of the local government protection afforded to the carrier. And in the case of international air carriers over international waters the mileage formula suggested by the parties in Central Greyhound Lines, Inc. of New York v. Mealey and by Pan American, which would exclude from taxation a percentage of revenue represented by the percentage of flight over international waters, is almost meaningless. Such an allocation formula would bear no relationship whatsoever to the fair share of the cost of local government protection afforded by the terminal states, in this case the Virgin Islands, New York and Florida.
 
 
 24
 Any difficulty which the case presents is, we think, semantical. The difficulty arises out of calling the gross receipts tax a tax "on" interstate transportation. It is in this case a tax on business done in the terminal state measured as a percentage of the gross receipts actually received there. Every tax imposed on a transportation company in any form imposes some burden on that company and upon its ability to engage in interstate or foreign commerce. Indeed every state tax on a business engaged in interstate commerce imposes some burden on commerce. Yet an allocated state income tax on such business is valid. See, e. g. Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). So long as the taxing state does not attempt to overreach by in effect taking advantage of its terminal position to extract a disproportionate sum in comparison to the local government services which it affords the formula it selects for measuring the tax should be sustained. The burden is on the taxpayer to show that the selected formula makes a disproportionate exaction or produces multiple taxation. General Motors Corp. v. Washington, supra, 377 U. S. at 449, 84 S.Ct. 1564; Northwestern States Portland Cement Co. v. Minnesota, supra, 358 U.S. at 463, 79 S.Ct. 357.
 
 
 25
 "[T]he burden is on the taxpayer to make oppression manifest by clear and cogent evidence." Norfolk & W. Ry. Co. v. North Carolina ex rel. Maxwell, 297 U.S. 682, 688, 56 S.Ct. 625, 628, 80 L.Ed. 977 (1936).
 
 
 26
 No such showing has been made here. Indeed the formula selected by the Commissioner is, as compared with other possibly valid allocation formulas, generous to the taxpayer. For example, allocation of revenues for each ticket between New York, Florida and the Virgin Islands, the three terminal jurisdictions, on a total mileage basis would produce far more revenue. We need not here decide if such an allocation with respect to flights over international waters would be an appropriate accommodation between freeing air commerce from undue burdens and preventing such commerce from exacting undue contributions from the terminal states. We hold only that the Virgin Islands nondiscriminatory tax on all receipts in the Virgin Islands from business transacted there has not been shown to exact an undue contribution. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255-256, 58 S.Ct. 546, 82 L.Ed. 823 (1938). This affirmance is, of course, without prejudice to Pan American's right to challenge assessments for years other than those involved in this litigation.
 
 
 27
 One other point must be discussed. The Government contends on appeal, although it did not so contend in the district court, that the commerce clause is not applicable to the Virgin Islands. In Port Construction Co. v. Government of Virgin Islands, supra, and Southerland Tours v. St. Croix Taxicab Ass'n, 315 F.2d 364 (3d Cir. 1963) (see also Alton v. Alton, 207 F.2d 667 (3d Cir. 1953)), we presumed, without extensive discussion of the issue, that the commerce clause applied there. That issue is not entirely clear. See, e. g., Buscaglia v. Ballester, 162 F.2d 805, 806-807 (1st Cir. 1947), Sancho v. Bacardi Corp. of America, 109 F.2d 57, 62-63 (1st Cir. 1940) rev'd on other grounds sub nom Bacardi Corp. of America v. Domenech, 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98 (1940); Mora v. Torres, 113 F.Supp. 309, 319 (D. Puerto Rico 1953) aff'd Mora v. Mejias, 206 F.2d 377 (1st Cir. 1953). The issue need not concern us here, however, for we perceive no difference between the applicable standard for judging an allocation formula under the commerce clause and that for judging such a formula under the due process clause of the Organic Act, 48 U.S.C. Sec. 1561. See, e. g., General Motors Corp. v. Washington, supra.
 
 
 28
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 This concession is perhaps ambiguous. The complaint alleges:
 "II
 "That this proceeding is instituted pursuant to the authority granted in Title 5, Chapter 89, Sec. 1261-1272 of the Vir-Islands Code and involves an actual controversy of a justiciable nature between the Plaintiff and the Defendants and further involves an interpretation of the governing Statute of the Virgin Islands relating to the construction or validity of said statute as authorized under Sec. 1262 of said Title 5; that there is a dispute as to the legal meaning and interpretation of the Statutes involved insofar as they pertain to the Plaintiff as will more fully appear hereafter; and this Plaintiff is entitled to declaratory relief."
 The Government's Answer alleges:
 "2. The allegations of paragraph 2 as to the applicability of the Declaratory Judgment statute are admitted; the defendants deny that plaintiff is entitled to the declaratory relief prayed for."
 The reference to 5 V.I.C. Secs. 1261-1272 is to the Virgin Islands enactment of the Uniform Declaratory Judgments Act. While some language in Grubel v. Mac-Laughlin, 286 F.Supp. 24, 27 (D.C.V.I. 1968) may suggest that this statute is a grant of jurisdiction, both the language of Sec. 1 of the Uniform Act, 5 V.I.C. Sec. 1261 and the definitive treatise on the subject make clear that there was no intention to alter the regular jurisdiction of any court over parties or subject matter. E. Borchard, Declaratory Judgments 231 (2d ed. 1941).
 
 
 [2]
 The power of the Virgin Islands legislature to regulate access to the district court in tax matters has significance beyond the area of the gross receipts tax. In the Naval Service Appropriation Act of 1922, 48 U.S.C. Sec. 1397, Congress enacted a territorial income tax which is a mirror image of the current federal income tax. See Chicago Bridge and Iron Co. v. Wheatley, 430 F.2d 973 (3d Cir. 1970). The income tax is, however, a territorial tax collected, not by the Internal Revenue Service, but by the territorial revenue officers. Dudley v. Commissioner of Internal Revenue, 258 F.2d 182 (3d Cir. 1970). The income tax is, however, a territorial tax collected, has paid Virgin Islands income taxes and that the apportionment of income tax between the United States and the Virgin Islands is not questioned. Undoubtedly this lack of question arises by virtue of the foreign tax credit. 26 U.S.C. Secs. 33, 901. The Virgin Islands legislature has enacted in Subchapter II of Title 33 a comprehensive plan for procedure and administration of the mirror image income tax, derived from Subtitle F of the Internal Revenue Code of 1954. This plan includes a provision for judicial review in the district court of asserted deficiencies, 33 V.I.C. Secs. 942, 943, 944 and 1931(1), analogous to review in the tax court. 26 U.S.C. Secs. 6212, 6213. It also permits suits for refund, 33 V.I.C. Sec. 1692, analogous to such suits pursuant to 26 U.S.C. Sec. 7422. As with the Internal Revenue Code, 26 U.S.C. Sec. 7421, there is a prohibition against maintaining an action to restrain the assessment or collection of any internal revenue tax in any court, 33 V.I.C. Sec. 1691, or from suing for a refund until after the administrative agency has acted on a refund claim. 33 V.I.C. Sec. 1692(a), (b). The power to postpone judicial review, whether in income tax cases or in gross receipts tax cases must be found in or inferred from some provision of the Organic Act or separate Congressional enactment other than the judiciary subchapter
 However, properly construed 33 V.I.C. Secs. 1691, 1692, do not limit the jurisdiction of the district court. As we made clear in Dudley v. Commissioner of Internal Revenue, supra, judicial review either by review of asserted deficiencies or by way of a suit for a refund is ultimately available in the district court. The prohibition against injunctions and the requirements for exhaustion of administrative review are merely the means toward an orderly enforcement mechanism. The power to adopt such means, including the power to say at what stage in the collection process the case will be ripe for judicial review in the district court is implied from the grant of collection authority to the territory. Judicial review is ultimately available in the district court. Thus these income tax provisions in Title 33 do not conflict with 48 U.S.C. Sec. 1612.
 
 
 [3]
 While this case was pending Sec. 41 of Title 33 was amended to read:
 "There shall be levied upon, collected from, and paid by individuals and firms, corporations and other associations doing business in the Virgin Islands, the taxes provided for in this chapter, which taxes shall be computed in proportion to the extent of the business done in the Virgin Islands with respect to the pertinent transaction."
 No. 2923, approved January 19, 1971, Eighth Legislature of the Virgin Islands. We do not deem the amendment to be significant for the disposition of this case.
 
 
 [4]
 In pertinent part, the New York statute reads:
 "[T]he words 'gross income' mean and include receipts received in or by reason of any sale . . . made or service rendered for ultimate consumption or use by the purchaser in this state. . . ." N.Y.Tax Law, Sec. 186-a(2) (c) (Consol.Laws ch. 60, McKinney).